Perry v. McHenry.

HIRAM PERRY, Appellant, v. HENRY MCHENRY, Appellee.

APPEAL FROM SANGAMON.

13 227
122 619
13 227
33a 289
13 227
135 487
13 227
145 593
13 227
148 19
13 227
159 125
13 227
162 563
13 227
163 564
13 227
176 486
13 227
180 172
180 365
180 451
13 227
198 4487
13 227
206 2611

A parol agreement, relating to a sale of lands, or an interest therein, for a longer period than one year, is within the statute of frauds, and is not valid.

A resulting trust can only arise in favor of a person who claims to have furnished the consideration-money, when such consideration or some aliquot part thereof, was furnished as part of the original transaction, at the time the purchase was made.

A party claiming the benefit of a resulting trust, must have occupied a position originally, which would have entitled him to be substituted in the place of the person to whom the conveyance was made.

No arrangement subsequent to the purchase, nor any parol agreement existing before, nor any parol declaration at the time a purchase is made, for the benefit of some other person, will raise a trust, in the absence of any other fraud than that which arises from a violation of a parol promise or agreement, if the purchaser pays his own money, and takes the title to himself.

THE pleadings and proofs of this case are stated in the opinion of the court.

The cause was heard before DAVIS, Judge, at the March term, 1851, of the Sangamon Circuit Court.

S. T. LOGAN, and STUART & EDWARDS, for appellant.

A. LINCOLN and W. H. HERNDON, for appellee.

TRUMBULL, J.   The complainant filed his bill in chancery in 1849, alleging that, in 1843, he was the owner of various tracts of land situated in Sangamon county, and containing, in all, two hundred and forty acres; that, in 1844, said premises were sold under a mortgage containing a power of sale, executed by the complainant to one Blankenship, and purchased by the Irwins, who received a deed therefor; that, at the time of said sale, the complainant was indebted to the Irwins, and they subsequently agreed that he might redeem the lands from the sale, by paying the amount for which they had sold, the amount of his debt to them, and a small advance thereon, making, in all, the sum of eleven hundred and eighty-five dollars, which he agreed to pay; that, being unable to raise the money, he made

an arrangement with the defendant, by which it was agreed between them, that the defendant should advance the whole amount above stated to the Irwins to redeem said lands, and that, in consideration of said payment, the defendant should have all complainant's right and title to the east half of said lands, and that complainant should have the west half of the same; that, in pursuance of said agreement, the defendant, on the first of March, 1846, executed his notes to the Irwins, payable in one, two, and three years, and received from them their title-bond to convey said premises to him upon the payment of said notes; that after the execution of said notes and title-bond, the complainant and defendant divided said lands, in pursuance of said agreement; and that, since said agreement, said defendant has had possession of the east half of said lands; and that at the time, for many years previous, and since, up to a late period, the complainant has resided upon and had the peaceable and undisturbed possession of the west half of said premises; that within a few months last past the defendant fraudulently claims the whole of said lands, has taken forcible possession of part of the house occupied by the complainant, and refuses to convey to him the west half of said lands; that said lands are worth the sum of twelve dollars per acre; that at the time of their redemption the Irwins were advised of the agreement between the complainant and defendant, and that they have instituted suits upon the notes of the defendant, which remain unpaid, and have obtained judgments thereon.

The bill prays that the defendant may be compelled to convey to the complainant the west half of the premises in question.

The defendant admits in his answer, that complainant was at one time the owner of the land, but charges that the Irwins, in 1843, purchased the same for the taxes of 1842; that the premises were not redeemed from the tax sale, and that the Irwins subsequently received a tax-deed therefor; that in 1842 the Irwins obtained judgment against the complainant in the Sangamon Circuit Court for $260.51, upon which judgment execution was duly issued, and the premises sold thereon by the sheriff, and purchased by the Irwins for the balance due on said

judgment, after deducting fifty dollars, which had been previously paid by the complainant; that the premiums were not redeemed from said sale, and the Irwins, at the expiration of fifteen months, received a deed for the same; admits the mortgage with power of sale to Blankenship, the sale under the same, and the purchase by the Irwins substantially as stated in the bill; charges that the Irwins, by virtue of their various purchases, had acquired a complete title to the lands, and that the complainant, long previous to 1846, when the defendant purchased, had abandoned all claim of title to the land, and contracted with the Irwins to retain possession of the same as their tenant, and pay rent therefor; admits the purchase of the land of the Irwins in 1846 for $1,185, the paying of $200 down, and giving his three several promissory notes for the remainder, but denies making the contract set forth by complainant in his bill; alleges that complainant is his brother-in-law; that some time previous to his purchase from the Irwins complainant appealed to him as a relative to aid him in getting the land or some part of it back from the Irwins, stating that it could be had for $1,085; and, after much importunity on the part of complainant, it was agreed between them that defendant should divide the land into two parts, and that complainant should have choice; that defendant should purchase the land of the Irwins at $1,085, paying $200 down and giving his notes for the remainder in three equal instalments, which complainant said the Irwins would accept; that defendant should pay the first note that fell due, and the complainant the last two, and that thereupon the Irwins conveying the whole to defendant, he should reconvey complainant's part to him; that defendant should have possession of his part immediately on making the purchase, and should have possession of the remainder in March, 1849, if complainant failed to pay as agreed; avers that this agreement would leave complainant in possession of part of the land, relieve him from the payment of rent, and give him time to raise the money to pay for it; that, in pursuance of this agreement, the parties went upon the land and divided it, and then went to Springfield to make the purchase of the Irwins, when it was ascertained that the purchase could not be made unless, in addition to the $1,085, the defendant

would pay $100, which the Irwins claimed and complainant admitted was then due them for rent; complainant agreed to refund defendant the $100, or any part of it which defendant ultimately might have to pay, and thereupon defendant made the purchase at $1,185, paying $200 down and giving his three notes for the remainder, and the Irwins executed to him a title-bond; admits taking possession of the part of the land falling to him by the division, and that he still retains it; alleges that when the first of the three notes fell due he discharged it; admits that the second and third are unpaid, and that the Irwins have obtained judgment upon them as alleged in the bill, but charges that it was complainant's duty to have paid them, and protesting that he ever did agree with complainant to purchase said land, pay the whole consideration therefor, and convey one half of the same to the complainant; the defendant insists that such an agreement, if made, would have been without consideration and utterly void, and insists upon the Statute of Frauds both in reference to the agreement alleged in the bill and the one set up in the answer. By an agreement filed in the cause, it is admitted that the defendant, since the filing of the bill, has fully paid said Irwins for the land, and that the case shall proceed as if these facts were charged in a supplemental bill and admitted in the answer.

The cause was heard upon bill, answer, replication, and evidence, and a decree entered, dismissing the bill, and against the complainant for costs.

The entering of this decree is assigned for error. The evidence is voluminous, and uncertain in some respects; but three facts are clearly established. That the Irwins were the purchasers of the premises at three different sales as alleged in the answer; that the complainant had acknowledged himself their tenant, rented the premises of them, and lost all right to the premises by redemption or otherwise, long before the purchase by the defendant; that the Irwins had, however, informed complainant, that if he would get any responsible man to take the land upon terms, such as those for which they afterwards sold it, he should have it; that the land, at the time of the purchase by the defendant, was worth about double what he gave for it, less the value

of the right of dower of complainant's wife in the premises; that both parties went together to the Irwins at the time the purchase was made, and that the bond for a deed was given to the defendant upon his paying down $200, and executing his notes for the balance of the $1,185, with the knowledge and without objection from the complainant. The main point in dispute is as to the terms of the agreement between complainant and defendant. Upon this question the evidence is somewhat conflicting, and whatever the agreement was, it was not in writing; but assuming that the complainant has proved that the defendant purchased the land under a parol agreement to convey to him one half of the same when he should obtain the title from the Irwins, and still he is not entitled to recover, for the reason that such contract, if one existed, related to a sale of lands or an interest therein, for a longer period than one year, and to have been valid must have been in writing and signed by the party against whom it is sought to be enforced.

It is idle to call the transaction by which the defendant obtained the title, a redemption from the Irwins. The complainant had no valid right of redemption, which he could transfer. The most that can be said is, that, by the indulgence of the Irwins, he was permitted to procure a purchaser of the land, at a price something less than its value. The case is not different from that of any other purchase, where one man buys real estate and takes the title in his own name, under a parol promise subsequently to convey the same or some interest therein to a third person.

It is insisted, however, that the defendant acted as the agent of the complainant in making the purchase of the Irwins, and that he is to be considered as holding the title in trust for the complainant to the extent of the interest which he had agreed to convey to him. Our act concerning frauds and perjuries, Rev. St. ch. 44, sec. 4, declares: "All declarations or creations of trusts or confidences of any lands, tenements, or hereditaments, shall be manifested and proved by some writing, signed by the party, who is by law enabled to declare such trust, or by his last will, in writing; or else they shall be utterly void and of no effect: Provided, that resulting trust or trusts created by con-

struction, implication, or operation by law, need not be in writing, and the same may be proved by parol." The resulting trust, not within the statute, and which may be shown by parol, is where the purchase is made in the name of one person with the money belonging to another. Lord Hardwicke, in speaking of trusts created by operation of law, in the case of Lloyd *v.* Spillet, 2 Atkyns, 150, says, that such trusts are those, "first, where an estate is purchased in the name of one person but the money or consideration is given by another; or secondly, where a trust is declared only as to part, and nothing said as to the rest, what remains undisposed of results to the heirs at law, and they cannot be said to be trustees for the residue." And he adds, "I do not know in any other instance besides these two, where this court have declared resulting trusts by operation of law, unless in cases of fraud, and where transactions have been carried on *malâ fide.*"

This case does not fall under the first head, because all the consideration paid to the Irwins for the land came from the defendant; so far, therefore, as a trust results from the payment of the money, it is in his favor, and not in favor of the complainant.

The second class of trusts mentioned by Lord Hardwicke has no application to a case like this; and it is not pretended that the defendant procured the title to himself through fraud, for the complainant was present and consenting when the bond for a deed to the defendant was given. How, then, was the defendant the trustee of the complainant in the purchase from the Irwins? If at all, it must have been by virtue of the agreement between the parties; but the statute declares that there shall be no trusts of land, unless manifested by some writing signed by the party, except such trusts as arise by operation of law. If the complainant could show that he paid any part of the consideration for the land, there the trust would arise from the payment of such consideration, and not from any agreement of the parties. Strike from the case all evidence of an agreement between the parties, and what is there left from which a trust can result in favor of the complainant? The case, then, is simply this: The defendant purchased a tract of land of the Irwins, and paid his own money for the same; the complainant was present at the

time of the purchase, assisted the defendant to make it, and, if you please, was the means of his procuring it at a less price than he otherwise could have done, though of this latter fact there is no evidence ; yet admitting its truth, and even then the complainant could not maintain this suit. It is admitted, that no part of the consideration-money paid to the Irwins was advanced by him. In Botsford v. Burr, 2 Johnson's Chancery, 415, it is said that a resulting trust " is founded on the actual payment of money, and on no other ground," and that " the trust results from the original transaction, at the time it takes place, and at no other time." Sayre v. Townsend, 15 Wendell, 650, decides that " a trust will not result to one who pays a part only of the consideration on the purchase of land conveyed to another, unless it be some definite part of the whole consideration, as one third, one half, or the like.". Crap v. Norton, 2 Atk. 74 ; White v. Carpenter, 2 Paige, 239; Smith v. Barnham, 3 Sumner, 462, and Freeman v. Kelly, 1 Hoffman, 90, are to the same point. If the money paid did not constitute. the whole consideration given for the land, then the money and the privilege of purchasing together made it up.

But how much and what part of the consideration did the complainant's right to purchase constitute ? The evidence leaves it extremely doubtful whether, by the terms of the parol agreement, if proof of such agreement were admissible, he was to have one half the land in quantity, or one half according to quality, and where the interest is left thus uncertain, no trust results in a party's favor. In the language of Justice Story in the case of Smith v. Barnham, " How, under such circumstances, would it be possible to say what interest or trust in the property each was to take ? Surely it would be too much to say, it was to depend upon the future valuation of the property, or the future contributions made by the parties respectively towards the purchase, or the possible value of the interests in other property contributed by each."

Several cases were referred to upon the argument, as establishing the principle that, where a person takes a conveyance, in his own name, of an estate which he undertakes to obtain for another, he will, in equity, be considered as holding it in trust

20 *

for his principal; and this principle, it is insisted, applies to the present case, inasmuch as the defendant, at the time he made the purchase, promised to convey part of the premises to the complainant, when the Irwins should have made him the title. The cases chiefly relied upon, as establishing this principle, are Sweet v. Jacocks, 6 Paige, 355; Lees v. Nuttall, 1 Russell & Mylne, 53; and Sheriff v. Neal, 6 Watts, 534.

The consideration of the deed to Jacocks was the compromise of a controversy existing between minor children, for whom Jacocks was acting, and other parties; and it was a manifest fraud upon the rights of those he represented for him to take a conveyance in his own name which was intended for their benefit, and where the entire consideration for the same, whatever it was, came from them. A trust resulted in favor of the minor children, in that case, upon two grounds. First, in consequence of the relation existing between Jacocks and the minor children whom he represented, and his bad faith in obtaining a conveyance to himself; not by violating any parol agreement between him and them, but by fraudulently using his position to practise a fraud upon their rights. Secondly, in consequence of the consideration passing from the minors, it being a compromise of a suit in their behalf, not his, which led to the making of the deed.

No such facts exist in this case.

The case of Lees v. Nuttall is distinguishable from the present in the fact, that the person purchasing in that case was the attorney of the plaintiff, and as such had been employed to make the purchase for his client, and he was held to be a trustee for the client, and to convey to him upon the payment of the purchase-money. In the present case, the purchase was made by the defendant, not as a mere agent, but as a principal in interest, and properly in his own name. Had the attorney in that case been authorized to procure the title in his own name, in trust for the principal, there would have been no fraud in the manner by which he procured the title, and the case would then have been more analogous to the present.

In the case of Sheriff v. Neal, the question as to what facts would constitute a person a trustee, or how far the statute of

frauds and perjuries was applicable to parol contracts, was not properly before the court.  The court below, in that case, had instructed the jury that, if James Sheriff, by representing to the commissioners that he was purchasing for the Neals, had obtained a conveyance of the land to himself from the commissioners, for a less sum of money than they would have given it to him for had he declared that he was buying it for himself, or not have said he was buying it for the Neals, he thereby became a trustee in the purchase for the Neals.

In commenting upon this instruction, the Supreme Court say, " The principle of law contained in this instruction is not complained of by the counsel for the plaintiff in error; but it is contended by him, that there was no evidence " to justify the giving such an instruction.  The court further say, " Seeing this principle is an important one, and to affirm it apparently as an abstract principle might possibly be carrying the doctrine of trust further than would comport with the provisions of. the act against frauds and perjuries, we do not wish to be understood as doing so by our judgment in this case."  It is apparent, from this extract from the opinion of the court, that the question under consideration was one of fact, rather than of law.  The court do, however, discuss the questions of law which might have been raised in the case at considerable length, and in a subsequent part of their opinion say, " The purchase was made by Sheriff of the commissioners, with his own money ; consequently, so far as the law operated to raise a use from the circumstance, it was in favor of Sheriff alone. , Nor would the operation of law have been different, even had Sheriff made a previous verbal agreement with the Neals to purchase the land for them, unless they had advanced the money to him for that purpose ; a subsequent tender of it, after the purchase of it had been completed, would not have availed or have taken the case out of the statute of frauds.  For, unless the trust, in such case, arise at the time of making the conveyance, it cannot be created subsequently, except by some new agreement or concurrent act of the parties.  The strong ground, then, if not the only one, upon which it would seem a trust can be raised in favor of the Neals, is that of fraud and a breach of good faith on the part

of Sheriff, in refusing to accept of the redemption-money, and attempting to take the land from them, contrary to his agreement, upon the faith of which they gave up to him their right to redeem it from commissioners." To sanction the last branch of the above extract as law, would be to repeal the statute of frauds and perjuries. If the refusal to comply with a parol agreement constitutes such a fraud as to take a case out of the statute, then no case is within it. For a party has only to allege that a person contracting by parol fraudulently refuses to comply with the terms of his parol agreement, which he must do in every case, or there would be no necessity for resorting to a court of equity to enforce it, and a case is made to which the statute does not apply. That such is not the law, even in Pennsylvania, is abundantly established by the authorities. It has been repeatedly decided, in that State, that, " unless there be something in the transaction more than is implied from the violation of a parol agreement, equity will not decree the purchaser to be a trustee." *Robertson v. Robertson*, 9 Watts, 32. This same case decides that, if a man employ another by parol, as his agent, to buy an estate for him, and the agent buys it, and pays for it with his own money, and takes a conveyance in his own name, it would be in the very teeth of the statute to decree this a resulting trust. Other Pennsylvania cases settle the same principle. Haines *v.* O'Connor, 10 Watts, 313; Fox *v.* Heffner, 1 Watts & Sergeant, 372; Jackman *v.* Ringland, 4 Watts & Sergeant, 149; Sample *v.* Coulson, 9 Id. 62.

In Sugden on Vendors, vol. 2, the rule is stated thus: " Where a man employs another by parol, as an agent to buy an estate, who buys it accordingly, but denies the trust, and no part of the purchase-money is paid by the principal, and there is no written agreement, he cannot compel the agent to convey the estate to him, as that would be directly in the teeth of the statute of frauds."

There are numerous other authorities to the same effect, and among them are Bartlett *v.* Pickersgill, 1 Eden, 515; Smith *v.* Burnham, 3 Sumner, 462; Botsford *v.* Burr, 2 Johns. Chanc. Rep. 405; Steere *v.* Steere, 5 Id. 19; Schmidt *v.* Gatewood, 2 Richardson's Eq. Rep. 178.

In the case of Schmidt *v.* Gatewood, the law upon this subject is more clearly and satisfactorily set forth than in any other I have seen. It is there held that, when a party enables himself to purchase at an under rate, by representing that he is purchasing for another, he is liable to have his purchase set aside for fraud; so, where competition is fraudulently reduced or destroyed. Such cases, it is said, steer entirely clear of the statute of frauds. The evidence of the purchaser's representation is received, not for the purpose of substantiating the supposed agreement, but for the purpose of showing the means by which he effected his fraudulent design, and, when received, it is employed, not for the purpose of enforcing the agreement, but for the purpose of setting it aside. When the fraud alleged consists in the non-fulfilment of an alleged agreement, it depends, of course, upon the fact whether there was an agreement to be performed, and that preliminary fact the statute will not allow to be established by parol.

The case of Botsford *v.* Burr was analogous to the present. Botsford applied to Burr for a loan of $900, to enable him to pay off a mortgage upon the Bogardus Farm. Burr refused to loan the money, but agreed to buy in the farm when sold on the mortgage, and to reconvey the same to Botsford, if he paid him the money advanced, interest, cost, and charges, within a month. Burr accordingly bought in the farm at the sale, and subsequently sold the same at an advance. A bill was filed to make him account for and pay over the balance, after deducting his advances, &c. The court held that, as Burr purchased at public auction, took the deed in his own name, and paid his own money, and, as the sale was made with the knowledge and assent of Botsford, there was no pretence for setting up a resulting trust, and that all parol proof for that purpose was inadmissible. It was further held, that "the conveyance by Bogardus, the mortgagee, and the payment of the purchase-money completed the contract, and that no parol proof of parol declarations, inconsistent with the deed, could be admitted."

Switzer *v.* Skiles, 3 Gilm. 534, was referred to upon the argument; but, as that was a case of a demurrer to a bill which did not properly involve the consideration of the statute of frauds,

it is unnecessary to examine it particularly; but, if it were necessary, it would be easy to point out manifest distinctions between that case and the present.

There is no point of view in which the complainant is entitled to the relief he seeks. He cannot claim to have a resulting trust in the land, because he paid no part of the purchase-money to the Irwins; he cannot claim to have the parol agreement enforced, because, admitting it to have existed, it is void by the statute of frauds and perjuries. The defendant cannot be treated as his trustee, because it does not appear that he used any artifice or misrepresentations in order to procure the title to himself.

There is another obstacle to a recovery by the complainant in this suit. According to the allegation of his bill, the defendant paid the $1,185 to the Irwins without any consideration whatever. That allegation is, that the defendant "was to advance the whole amount above stated, and pay the same to the Irwins, to redeem the lands aforesaid; and that, in consideration of such payment and redemption, it was further agreed, that the said McHenry (the defendant) was to have all the right, title, and interest of the complainant in and to the east half of said lands;" which was just nothing at all, for the complainant had no right, title, or interest in the premises. Such an agreement would be void for want of a consideration to support it.

The result of our examination of the doctrine of resulting trusts is this, — that such a trust can only arise in favor of a person who claims to have furnished the consideration-money, when such consideration, or some aliquot part thereof was furnished as part of the original transaction at the time the purchase was made. The party claiming the benefit of a resulting trust, must have occupied a position originally which would have entitled him to be substituted in the place of him to whom the conveyance has been made. No subsequent arrangement, made after the purchase, nor any parol agreement existing before, nor parol declaration, at the time that the purchase is made for the benefit of some other person, will raise a trust in such other person's favor, in the absence of any other fraud than that which arises from the violation of the purchaser's parol promise

or agreement, where the purchaser takes the title in his own name, and pays the consideration out of his own funds.

*Decree affirmed.*