Burden v. Sheridan.

BURDEN v. SHERIDAN.

| 36 | 125 |
| 90 | 371 |
| 36 | 125 |
| 92 | 620 |
| 36 | 125 |
| 94 | 240 |
| 36 | 125 |
| 115 | 332 |
| 36 | 125 |
| 121 | 439 |
| 121 | 440 |
| 33 | 125 |
| 141 | 289 |

1. **Statute of frauds: RESULTING TRUST.** A resulting trust cannot be sustained by parol evidence, where no part of the purchase-money was paid by the person claiming to be the *cestui que trust*.

2. —— It is accordingly *held*, where A hires B by parol, as agent, to buy an estate for him, and B accordingly makes the purchase in his own name, gives his own notes for the purchase-money, and afterward denies the trust, that A cannot compel a conveyance of the estate to him. The authorities bearing on the question collated and discussed by MILLER, J.

3. —— IN CASES OF FRAUD. The fraud against which a court of equity will relieve by enforcing a contract, notwithstanding the statute of frauds, consists in the repudiation of an agreement upon the faith of which an innocent party has been misled to his injury, and not in the mere moral wrong involved in the repudiation of a contract which by reason of the statute of frauds cannot be enforced.

*Appeal from Dubuque District Court.*

FRIDAY, JANUARY 25.

THIS is a suit in equity brought to enforce an alleged trust. The petition alleges, in substance, that one Hans Lawther was the owner of certain real estate near the city of Dubuque; that about the 21st day of April, 1871, and prior thereto, the plaintiff was negotiating with Lawther for the purchase thereof; that, for the purpose of consummating said purchase the plaintiff employed the defendant Sheridan to act as his agent; that it was agreed between plaintiff and Sheridan that

the negotiations for the purchase of said land should be conducted in behalf of plaintiff by Sheridan as the agent of plaintiff, for which services Sheridan should receive a reasonable compensation; that plaintiff was willing to pay for said real estate the sum of $4,500 if it could not be purchased for less than that sum, and so instructed his said agent; that with such instructions and understanding Sheridan undertook to aid plaintiff in making a purchase of the land for plaintiff; that plaintiff relied upon said Sheridan to conduct said negotiations and purchase, and by reason thereof omitted to take any part therein personally; that, without the knowledge or consent of plaintiff, Sheridan fraudulently purchased said real estate in his own name and for his own benefit, for the consideration of $4,500, giving his (Sheridan's) promissory note, falling due at different dates, for the entire purchase-money, and receiving from said Lawther a bond for a conveyance to said Sheridan upon payment, etc.; that Sheridan denies the alleged agency and refuses to transfer the bond to the plaintiff, or in any manner to allow plaintiff the benefit of said purchase, claiming to have purchased the land in his own right and for his own benefit.

It is further alleged that, by reason of the fact that plaintiff owns land contiguous to the land in controversy and needs the same in order to the full use and enjoyment of what he now owns, the lands purchased by defendant are of peculiar value to plaintiff — greater in amount than the price at which they were purchased by defendant.

In an amendment to the petition it is averred that Sheridan entered into said agreement with plaintiff with the fraudulent design and purpose of thereby keeping plaintiff from competing with defendant in the purchase of the land, and to secure the same to himself upon better terms than he might otherwise have been able to do.

A decree is asked declaring Sheridan as holding the contract for the land as the trustee of plaintiff; that he be adjudged to assign the bond of Lawther to plaintiff; that Lawther be decreed to convey to plaintiff upon payment of the purchase-money.

The answer denies all the averments of the petition except defendant's purchase of the land from Lawther, giving his notes and receiving the bond for a deed, and pleads the statute of frauds.

The cause was tried by the court and a decree rendered for plaintiff.

Defendant Sheridan appeals.

*Smith, Fouke & Chapin* for the appellant.

*Adams & Robinson* for the appellee.

MILLER, J. — The answer of the defendant Sheridan denies the contract alleged in the petition so as to put the plaintiff on proof of the same by competent evidence. No writing or document is offered to establish it, but it is sought to do so by parol evidence entirely. This is objected to by appellant as incompetent under the statute of frauds. That statute provides that no evidence of any contract for the creation or transfer of any interest in lands, except leases for a term not exceeding one year, is competent, unless it be in writing and signed by the party charged or by his authorized agent. Rev., §§ 4006, 4007. It is further provided in section 4008 that the above provision does not apply " where the purchase-money or any portion thereof has been received by the vendor, or where the vendee, with the actual or implied consent of the vendor, has taken and held possession thereof under and by virtue of the contract, or where there is any other circumstance which by the law heretofore in force would have taken a case out of the statute of frauds." It has accordingly been held by this court that a parol contract for the sale of real property, accompanied by a delivery of actual possession, is valid and binding. *Baldwin* v. *Thompson*, 15 Iowa, 504; *Davis, Sawyer & Co.* v. *Strohm*, 17 id. 421.

So, also, where the purchase-money has been paid by the vendee the contract to convey may be proved by parol. Ibid. And it has likewise been held in accord with the universal

holding of all the authorities that where real estate is purchased by one person with money furnished by another, an implied or constructive trust arises, the former being held as a trustee for the latter, and that the facts establishing such trust may be proved by parol evidence. *Bryant* v. *Hendricks*, 5 Iowa, 256; *McCoy* v. *Hughes*, 1 G. Gr. 370; *Brooks* v. *Ellis*, 3 id. 527; *McIntire* v. *Skinner*, 4 id. 89; *Sullivan* v. *McLenans*, 2 Iowa, 437; *Holland* v. *Hensley*, 4 id. 222; *Sunderland* v. *Sunderland*, 19 id. 325, and cases cited; *Nelson* v. *Worrell*, 20 id. 469; *Fox* v. *Doherty*, 30 id. 334; see, also, 2 Story's Eq. Jur., § 1201, and notes.

But it is laid down by Judge STORY (2 Eq. Jur., § 1201a) that this doctrine of resulting or implied trusts " is strictly limited to cases where the purchase has been made in the name of one person and the purchase-money has been paid by another. For," (says he), " where a man employs another person by parol as agent to buy an estate for him, and the latter buys it accordingly in his own name, and no part of the purchase-money is paid by the principal; there, if the agent denies the trust, and there is no written agreement or document establishing it, he cannot, by a suit in equity, compel the agent to convey the estate to him; for (as has been truly said) that would be decidedly in the teeth of the statute of frauds." The same doctrine, in nearly the same language, is stated in Sugden on Vendors and Purchasers, vol 2, 9th ed., p. 163. The author of Browne on Frauds, § 96, says: " It seems to have been held that where, in a case of trust arising upon an agency, parol evidence was inadmissible to prove it; but the later English cases favor a contrary doctrine."

The first case cited by Story and Sugden respectively in support of the doctrine stated by them is *Bartlett* v. *Pickersgill*, 1 Eden, 515; also found in 4 East, 577, note. The defendant in that case, under a verbal agreement, bought an estate for the plaintiff; no part of the purchase-money was paid by the plaintiff. The defendant articled for the estate in his own name and refused to convey to the plaintiff. There being no written evidence that the estate was pur-

chased for the plaintiff the question was, whether the plaintiff might give parol evidence thereof. The court said: "To allow it" (the evidence) "would be to overturn the statute of frauds * * *. It is not like the case of money paid by one man, and a conveyance taken in the name of another. If I were to allow the evidence in the present case, I do not know a case where the statute would take place." It is also held that if Bartlett had paid any money, it would render the evidence competent, but as he had not, the bill was dismissed. The case of *Crop* v. *Norton*, 9 Mod. 233, holds that a resulting trust could not be sustained where only *a part* of the purchase-money was paid by the person claiming to be *cestui que trust*.

In *Botsford* v. *Burr*, 2 Johns. Ch. 405, Chancellor KENT, in his opinion, says: "If the party who sets up a resulting trust made no payment, he cannot be permitted to show, by parol proof, that the purchase was made for his benefit, or on his account. This would be to overturn the statute of frauds; and so it was ruled by Lord Keeper HENLEY in the case of *Bartlett* v. *Pickersgill*," *supra*. He further says: "To admit it, would be repealing the statute of frauds, and would endanger the security of real property resting in title by deed. Nor would a *subsequent* advance of money to the purchaser, after the purchase is complete and ended, alter the case * * *; for the trust arises out of the circumstance that the moneys of the real, and not of the nominal purchaser, formed, *at the time*, the consideration of that purchase and became converted into the land."

In *Steere* v. *Steere et al.*, 5 Johns. Ch. 1, the bill charged that the defendants purchased the land pursuant to an agreement that they were to do so as plaintiff's agents, etc., and Chancellor KENT in the opinion says in reference to certain lots which constituted a part of the purchase: "If any trust exists as to them, * * * it is a trust by implication or operation of law, and such a trust cannot be made out but by showing the actual payment of the money by the *cestui que trust*, or an actual loan by him for that purpose, citing

*Botsford* v. *Burr, supra,* and quoting in full the rule as stated by Sugden and Story, before referred to.

In *Pinnock* v. *Clough,* 16 ~~Vern~~ 500, the defendant purchased a farm for the plaintiff, but there was no *written* agreement between them, nor did the plaintiff pay or advance *at the time* any portion of the purchase-money. The defendant took the deed in his own name, paid part of the consideration, and gave security for the remainder. On a bill filed to compel a conveyance it was held that no such trust was created by the transaction as could be enforced in equity. The learned judge, delivering the opinion in that case, cites and approves the case of *Bartlett* v. *Pickersgill, supra,* and quotes with approval the rule laid down by Sugden, and then says : " I am not aware that the doctrine of the case of *Bartlett* v. *Pickersgill* has been impugned. Its authority is fully recognized by Chancellor KENT in *Boyd* v. *McLain,* 1 Johns. Ch. 582; in *Botsford* v. *Burr,* 2 id. 405 ; and in *Steere* v. *Steere,* 5 Johns.; and by Judge STORY, in *Smith* v. *Burnham,* 3 Sumn. 464."

In this case of *Smith* v. *Burnham* the bill alleged that the parties had agreed to become partners in purchasing and sell-ing lands and lumber upon a joint capital furnished by both, the profit and loss to be equally shared between them. The bill then alleged that defendant had, in pursuance of the agreement, made certain purchases of land and lumber, and that plaintiff had made certain advances in money to the defendant on the same account. The prayer was for a dissolution of the partnership, a settlement of the firm accounts, and that the defendant should be decreed to *convey to plaintiff his equitable share of the lands remaining unsold* The statute of frauds was insisted upon, and on a review of the authorities the court held that the plaintiff could not found an equitable claim to a conveyance upon *parol evidence.* The case of *Thorn* v. *Thorn,* 11 Iowa, 146, which involved the same question, was decided on the authority of the case of *Smith* v. *Burnham.*

In *Perry* v. *McHenry,* 13 Ill. 227, it was held that no subsequent arrangement made after the purchase, nor any parol

agreement made at the time or prior that the purchase is to be made for the benefit of some other person, will raise a trust in such person's favor, in the absence of any other fraud than that which arises from the violation of the purchaser's parol agreement, where he takes the title in his own name and pays the consideration out of his own funds. And *Bartlett* v. *Pickersgill* is again cited for this holding. The case of *Perry* v. *McHenry* is followed in a very recent case in the same court, where a purchaser of lands under a decree of foreclosure of a mortgage took the title in his own name and gave his note for the purchase-money, it was held that an express trust could not arise in favor of the holder of the equity of redemption, on a parol agreement between himself and the purchaser, made at a time prior to the sale, that the purchaser should make the purchase and hold the title for the benefit of and in trust for such owner of the equity of redemption, and as security for the advances made by the purchaser. Such a trust, resting merely in parol, was held to be within the statute of frauds. *Walker* v. *Klock et al.*, 55 Ill. 362.

The cases we have cited, both English and American, fully sustain the doctrine announced by Story and Sugden, above referred to.

In support of the statement in Brown on Frauds, that "the later English cases favor a contrary doctrine," three cases are cited. The first of these is *Bartlett* v. *Pickersgill*, which we have seen is the leading case, from which Story and Sugden deduce the rule stated by them.

The next case cited by Mr. Brown is *Taylor* v. *Salmon*, 4 Mylne & Craig, 134. In that case Salmon was the agent and one of the stockholders of a mining company, and in that capacity proposed in writing *for the company* to procure from Lord Dunally a lease of certain mineral lands. The latter accepted in writing. Salmon afterward undertook to have the lease executed to himself for his own benefit. On a bill being filed to compel Lord Dunally to execute the lease to the company it was held that the proposition by Salmon was clearly for the company, and being accepted the contract on its face was on

behalf of the company, and Lord Dunally not objecting to granting the lease to the company, a decree was accordingly entered. There was no question of the competency of parol evidence. The other case (*Dale* v. *Hamilton*, 5 Hare, 369, 26 Eng. Ch.) decides that a partnership agreement between A and B that they shall be jointly interested in a speculation for buying, improving for sale and selling lands, may be proved without being evidenced by any writing signed by, or by the authority of, the party to be charged therewith, within the statute of frauds. This decision is based upon the doctrine that where a partnership or an agreement in the nature of a partnership exists between two persons, and land is acquired by the partnership as a substratum for such partnership, as well as where it is acquired in the course of the business, and that the partnership being proven as an independent fact, the court without regard to the statute of frauds would inquire of what the partnership stock consisted, whether of land or property of any other nature. That being the property of the partnership, it would not be treated by the court as land, but as personal property of the partnership.

Without stopping to examine the soundness of the decision in this case, it is sufficient to say that it is not in conflict with the doctrine stated by Sugden and Story, and does not support the text in Brown on Frauds. Counsel for appellee have also cited *Lees* v. *Nutall*, 1 Russell & Mylne, 53. In that case the wife of plaintiff and her sister, as administratrixes of their father, were entitled to a mortgage debt charged on the premises in question, and the plaintiff and his wife, with the sanction of the sister, had long been in possession. He was desirous of purchasing the equity of redemption from Walker, the owner. Walker proposed by letter to sell to plaintiff at a price named therein. Plaintiff accepted and instructed Nuttall, who had been acting as his attorney in previous negotiations for the property, to draw up a formal agreement of purchase and to procure Walker's signature to it. Within a day or two afterward Nuttall went over to the place of residence

of Walker, and in his own name and behalf entered into an agreement for the purchase.

The defendant Nuttall claimed in his answer the benefit of the purchase, stating that for two months before the purchase he had been in treaty with Walker for the purchase of the equity of redemption; that he entered into the agreement on his own account, and that he did not in the transaction consider himself as the attorney of Lees. He did not plead or insist on the statute of frauds.

The report of the case states that "the material facts of plaintiff's case were established by evidence." The character of the evidence does not appear. It is to be presumed, however, that it was competent evidence.

The Master of the Rolls, on the ground that Nuttall had been employed by plaintiff as his agent for the purchase of the estate, entered a decree for plaintiff. No question as to the competency of parol evidence was involved in the case.

This case of *Lees* v. *Nuttall* is cited in 2 Story's Eq. Jur., § 1211 *a*, in support of the doctrine there stated, that "if an agent, who is employed to purchase for another, purchases in his own name or for his own account, he will be held a trustee of the principal at the option of another." There can be no doubt of the soundness of this doctrine whenever the facts are established by competent evidence, and this is not in conflict with the doctrine already quoted from the same author, and which the authorities already cited fully sustain. This is upon the general doctrine that whatever acts are done by trustees in respect to the trust property shall be deemed to be done for the benefit of the *cestui que trust*, and not for the benefit of the trustee. 2 Story's Eq. Jur., § 1211, and notes. And the same principle is applied to persons standing in other fiduciary relations to each other, such as attorneys and agents. Id., § 1211 *a*. But this relation must be admitted or established by competent evidence before a court of equity will declare or enforce the trust.

With this understanding there is no material conflict in the authorities upon the question we have been considering. We

Burden v. Sheridan.

think the doctrine well sustained that, where one man merely employs another by parol as an agent to purchase real property for him, and the person thus employed purchases the land in his own name, and no part of the purchase-money is paid by the principal, and the agent denies the trust, it would directly overturn the statute of frauds to admit any other evidence than that which the statute requires.

We think this doctrine is not impugned by *Bryant* v. *Hendricks*, 5 Iowa, 256, or by *Judd* v. *Mosely*, 30 id. 428. In the .former case different persons *had claims on and were interested* in certain public lands. They made an oral agreement that one party thus interested should enter the whole land in his own name, the others to pay each his proportion toward the entry; and when a survey was made, and the parcel of each ascertained, the one entering the whole should convey to the others their respective parcels. This was held not within the statute of frauds.

In the case of *Judd* v. *Mosely* the owner of land sold at tax sale and the purchaser verbally agreed that the former need not redeem in order to save his rights; that the purchaser should receive the tax deed at the expiration of the term of redemption, and then quitclaim to the owner upon his paying to him the amount he would be required to in order to redeem under the law, and by reason of such representations and agreements the owner was deterred from making redemption within the time allowed by law. It was held that this was not within the statute of frauds, but that a trust was created in favor of the owner of the land which could be enforced against the tax purchaser.

In each of these cases there is something more than a mere agreement by parol to convey to the respective plaintiffs. The plaintiffs had in each case acquired rights in the respective premises at the time the agreements were made. In the latter case the plaintiff was the legal owner of the land subject to defendant's lien for taxes. This lien plaintiff could have extinguished within the time the law prescribed, which had not yet expired. The agreement was in substance an exten-

sion of this time.   To have allowed defendant to take advantage of his tax deed, acquired under the circumstances disclosed in the case, and repudiate his agreement, would have enabled him to perpetrate a gross fraud upon the other party.

We come now to consider whether there has been such fraud on the part of the defendant as will take the case out of the statute.

The fraud against which a court of equity will relieve, to the extent of enforcing a parol contract, notwithstanding the statute of frauds, is not the mere moral fraud or wrong involved in the repudiation of a contract actually entered into, but which by reason of the statute he is not bound to perform for want of its being in writing (*Montacute* v. *Maxwell*, 1 P. Wms. 618; *Hawkins* v. *Holmes*, id. 770; Browne on Frauds, § 439), but consists in the repudiation of a contract which has been made and upon which an innocent party has been misled to his injury, if the statute of frauds be strictly enforced against him, as for example, where there has been a parol agreement for an absolute conveyance of land and for a defeasance to be executed by the grantee; and he having obtained the conveyance refuses to execute the defeasance, a court of equity would compel him to do so, because of the fraud attempted and which would result if the case should be held to be within the statute of frauds.   The attempted fraud in such case, however, consists not merely in refusing to do what the party has agreed to do, *but in deceiving the plaintiff out of his property*.   See Browne on Frauds, § 441, and notes. So where one agreement in writing is proposed and drawn, and another fraudulently and secretly brought in and executed in lieu of the former.   In this and like cases, where there has been some trick or artifice, or misrepresentation by which a party has been induced to enter into an agreement or part with some right, and would sustain injury if the other party is allowed to repudiate the agreement, courts of equity have granted relief to the party injured.   See Browne on Frauds, §§ 94, 442, 443, 444, and cases cited in notes.   This seems to be the farthest courts of equity have gone.

3. —— in cases of fraud.

Upon a careful examination of the evidence, and giving it all the weight claimed by plaintiff, we are of opinion that it fails to establish such fraud on the part of Sheridan as will take the case out of the statute. Burden has suffered, and will suffer no loss or injury. He has parted with no right or interest whereby he will be prejudiced by the defendant's repudiation of the parol agreement.

It is alleged that Sheridan made the agreement with plaintiff for the purpose of keeping the latter from competing with him for the purchase of the land, "*and with the design of securing said land himself and upon better* terms than he might otherwise be able to do." Now the pleadings and the proofs show that Sheridan purchased the property at the same price Burden alleges he was willing to give for it if he could get it for no less, viz.: $4,500. The evidence, in our opinion, entirely fails to establish the fraud alleged or any fraud other than is always involved in the simple breach of a contract. It is but a naked repudiation of an alleged parol agreement.

There being no fraud such as will take the case out of the statute, and the plaintiff having made no payment or advanced any part of the purchase-money, the alleged trust being denied by the defendant, parol evidence is incompetent under the statute of frauds to prove it. The judgment will therefore be reversed and the cause remanded to the district court with directions to enter a decree dismissing plaintiff's petition on the merits, or the defendant may on request have such decree in this court.

Reversed.