Johnson, Chief Judge.
From the finding of facts it appears :
*44 1. That the agreement upon which this action is founded rested in parol — that by the terms of that agreement the purchase was to be made by defendant, and in his own name, and not in that of plaintiff, and the reason for this was, that owing to difficulty with Jones, the owner, he would not deal with plaintiff.
This undertaking was founded on no consideration, but was purely voluntary, though plaintiff was willing, and offered, to pay a reasonable compensation, which defendant refused, alleging as a reason, prior favors received.
2. The plaintiff was to save defendant harmless from all loss and trouble in making the purchase.
3. On the 16th of December, 1872, defendant reported to plaintiff, as the result of his negotiations for a purchase, that Jones and wife had offered to sell to him the land for $6,000 — $2,000 cash January 15, 1872; $2,000 March 1, 1873 ; and $2,000 March 1, 1874, with interest on deferred payments from March 1,1872.
Plaintiff authorized him to accept, and on the same day Jones and wife and the defendant entered into the written contract of sale and purchase set out in the statement of facts, by which a deed was to be made in fee to defendant, March next, he to execute notes, and mortgage back for the ■ deferred payments.
Before the time arrived for consummating the contract, plaintiff arranged to borrow the money to meet the cash payment, and also verbally agreed with one Phillis, by which he, on receiving a deed for the land, as security, was to advance the amount to pay the deferred payments as they matured.
4. On the 8th day of January, 1872, seven days before the cash payment was to be made, plaintiff undertook to inform defendant that he had arranged for the cash payment, but was prevented by the harshness of defendant, and by his refusal to hear him. At that time the defendant declared that plaintiff should not have the land; that he would purchase, pay, and keep it himself; and then, and ever after, refused to recognize plaintiff’s rights.
*45 5. A tender of the $2,000 was duly made, but refused, but at no time did the plaintiff' ever offer indemnity to defendant for his liability to pay the deferred payments.
6. In accordance with the terms of the verbal agreement between the parties, and in performance of his written contract of purchase, the defendant took the title in fee in his own name, and executed to Jones, notes and amortgage for the deferred payments.
The district court, upon this state of fact, was of opinion that this verbal agreement was valid and binding, but re fused the relief sought on the ground that no indemnify was tendered to the defendant against the obligations he had incurred for the payment of the purchase money.
Two questions arise:
1. Was this verbal agreement valid and binding, and does it and the facts and circumstances shown create a trust of the legal title in favor of the plaintiffs, such as equity will enforce as against the defendant ?
2. Assuming that it does, has the plaintiff performed all the conditions to entitle him to have the trust enforced; or does his failure to tender indemnity to defendant against his liability on the notes and mortgage, defeat his right to such enforcement ?
1. As to the first question :
A careful analysis of this verbal contract shows that it is not the case of the employment of an agent to purchase property, and take the title in the name of his principal, and a breach of his undertaking, by taking the title in his own name. Nor is it the case of a purchase with the means of the principal.
The defendant was to, and did, purchase in his own name, according to the terms of his contract, and with his own means. The owner of the land would not deal with plaintiff, and he was not to be known in the purchase.
Defendant’s purchase in his own name was no breach of contract even, much less a breach of trust, properly speaking. He only broke his agreement to convey to the plaint *46 iff the title so acquired. In fact, before he consummated the purchase, ho notified plaintiff that he would not purchase for him, but for himself — that he would not accept plaintiff’s money, but would use his own. He held no money or property of the plaintiff in trust to make the purchase, but bought with his own means, and gave his own obligations for the deferred payments. Neither did he, by deceit, prevent the plaintiff from becoming a purchaser. There was no mala fieles in taking the deed in defendant’s own name, as that was the agreement, nor in misappropriating plaintiff’s property or money for he had none, nor in deceiving and misleading the plaintiffj so as to prevent him from acting for himself, as he was not thereby prevented from competing in the purchase. Whatever bad faith existed, consisted in repudiating his agreement to convey the land so purchased.
This action is to specifically enforce that agreement. It is an action on the contract, to acquire lands. Our statute of frauds prohibits an actio if on such a verbal contract.
Equity only relieves when, by means of such contract, a fraud is perpetrated.
The equitable action is not on the verbal contract, but grows out of fraudulent acts committed under it. In such case, the parol agreement is admissible in connection with the fraudulent acts out of which the right to relief arises.
In Lloyd v. Spillet, 2 Atk. 148, Lord Hardwicke classified resulting trusts as follows:
First. Where an estate is purchased in the name of one person, but the consideration is given by another, and a trust in the estate results to him who gave the consideration.
Second. When a trust is declared as to part only of an estate, and nothing is said as to the rest. 'In such case, what remains results to the heir at law.
Third. Where the transactions have been carried on mala fide; where there has been a fraud in gaining the conveyance from another, that may be a reason for making the *47 grantee in that conveyance to be considered merely as a trustee.
In this ease, the plaintiff did not furnish-the purchase money, and, hence, it does not come within the first class named by Lord Hardwieke.
If there is a resulting trust at all it belongs to the third class, where there has been a fraud in gaining a conveyance in his name from another, whereby he becomes a trustee, and holds the property for another, to whom, in equity and good conscience, it belongs.
In such cases, parol evidence is always admissible to show the real consideration of a conveyance, and by whom it was actually paid, for the purpose of raising a trust where the deed is absolute on its face. The trust reverts to the source and origiu of the consideration, whatever may be its character or nature.
Equity will relieve against a fraudulent purchaser, by converting him into a trustee for the person injured, and parol evidence of the facts is admissible to show that he is such fraudulent purchaser. This doctrine rests upon the ground, that where a party has parted with his money or property, and an attempt is made to rob him of the fruits of it, equity will decree a trust in such fruits. If, however, he has made no payment, he can not, as a general rule, be permitted to show by parol, that the purchase was made for his benefit; nor would a subsequent advance of the money to the purchaser, after the title is vested, alter the ease. Botsford v. Burr, 2 Johns. Ch. 405; Hollida v. Shoup, 4 Md. 465. The trust must attach, if at all, at the time of the conveyance, for it is the money which has gone to the vendor, as the inducement of the title with which he parts, that creates the equity in favor of him who advances it. White v. Carpenter, 2 Paige, 238; Botsford v. Burr, 2 Johns. Ch. 405; Walter v Klock, 55 Ill. 362.
In resulting trusts of this class, the real foundation is, that the ownership of the consideration money determines the equitable ownership of the estate.
*48 Thus, if the actual purchaser agreed to buy and hold for the real purchaser, with money loaned by him to the latter for that purpose, he is a trustee of the title for the borrower. McDonough v. O’Neil, 113 Mass. 92; Kendall v. Mann, 11 Allen, 15; Blodget v. Hildrieth, 103 Mass. 484; Jackson v. Stephen, 108 Mass. 94.
Upon the same principle, a deed absolute on its face, may be converted into a mortgage, by showing that it was in consideration of a loan, and equity will treat the grantee as a trustee of the title, and compel a reconveyance on payment of the debt. This is so, whether there was a verbal defeasance, or not. But the mere breach of a parol agreement, is not such a fraud as takes the case out of the statute. Rodgers v. Simmons, 55 Ill. 76; Merrit v. Brown, 6 C. E. Green, 401.
If this were not so, the consequence would be, that the common law rule, that parol contemporaneous evidence can not be admitted to vary the terms of a written agreement, and also the provisions of the statute of frauds, would be abrogated.
Evidence of fraud opens the terms of a written agreement to proof of a parol contemporaneous agreement which has been broken by the opposite party; or in other words parol evidence is only admissible upon proof of fraud.
It must appear that the promise was used as a means of imposition and deceit. If the case taken as a whole is one of fraud, the verbal promise may be received in evidence as one of the steps by which the fraud was accomplished. To deduce the fraud from the contract and then give effect to the contract on the score of fraud, is reasoning in'a circle. The fraud which will give jurisdiction to compel a performance of the parol trust, must consist in something more than a mere breach of parol undertaking. Bigelow on Frauds, 118, 119, and cases; 2 Leading Oases in Equity, 1015.
A parol agreement that another shall be interested in the purchase of lands, or the declaration that he buys for an *49 other, where no money is advanced, comes directly under the statute of fraud. Irvin v. Ivers, 7 Ind. 308. So-when it is orally agreed by a purchase!’, at sheriff’s-sale, to hold the land for defendant in execution, in the ab-sense of proof showingthatthedefendantwaspreventedfrom keeping his land from sale, will not render the purchaser a trustee. Mincott v. Mitchell, 30 Ind. 228; Kisler v. Kisler, 2 Watts. 323. And if one takes a conveyance of land in his own name and pays for it with his own money, parol evidence is not admissible to show that he was employed as agent for another. Barnett v. Dougherty, 8 Carey, 272.
In Burden v. Sheridan, 36 Iowa, 125, the cases are ably reviewed, and it was held, that where A. hires B., by parol, as agent to buy au estate for him, and B. makes the purchase in his own name, and gives his own notes for the purchase money, and denies the trust; A. can not compel a conveyance of the estate to him — that the fraud against which a court of equity gives relief, consists in the repudiation of a contract, upon the faith of which an innocent party has been misled to his injury, and not in the mere-moral wrong involved in the repudiation of a contract which, by reason of the statute of frauds, can not be enforced. 2 Story Eq. § 1201a; 2 Sugden on Vendors, 163;. Bartlet v. Pickersgill, 1 Eden, 515 ; Botsford v. Burr, 2 Johns. Ch. 405 ; Steere v. Steere, 5 Johns. Ch. 1; Pinnock v. Clough,. 16 Vern. 500.
In Perry v. McHenry, 13 Ill. 227, it was held that noparo] agreement, made at the time or prior, that the purchase is to be made for the benefit of some other person,, will raise a trust in such person’s favor, in the absence of any other than that which arises from a violation of the purchaser’s parol agreement, when he takes the title in his-own name, and pays the consideration out of his own. funds. Brown on Frauds, § 441, and notes. But where-the fraud consists, not merely in refusing to do what he- *50 agreed to do, but in deceiving the plaintiff out of his property, equity will grant the relief. When the parol agreement is the instrument or means by which one deceives and defrauds another, to his injury, it is unconscionable that he should retain the fruits of his acts, which in equity belong to another.
The claim here is, that an express trust arose out of the verbal agreement, which may be proved and enforced in Ohio, as this state has never adopted the provisions of the statute of frauds of 29 Car. 11, chap. 3, relating to declarations of trusts.
Without undertaking to define and limit the power of courts of equity to grant relief when fraud is alleged, or the extent to which a court will allow a parol contract to establish a trust in a deed absolute, we think it safe to say that, in all such cases, something more must appear than the mere breach of such parol agreement and the damages consequent on such breach. The facts disclosed should make it clear and convincing, that by the breach of such contract the party has acquired an unconscionable advantage, or that the parol agreement has been employed to deprive the other party of his property.
By our statute of frauds no action shall be brought to charge the defendant upon any contract concerning lands, unless the agreement upon which such action is brought, or some note or memorandum thereof, shall be in writing. This statute operates in equity as well as at law. But as this is a statute to prevent frauds, equity will grant relief — not allow it to be used as an instrument to promote fraud.
Fraud is so multifarious in its forms that it would be dangerous to attempt a definition of the powers of a court of equity in such eases. Each case depends upon its own facts and circumstances. It may be said, however, that in all such actions, the action is brought, not on the verbal agreement, but because of the bad faith, fraud, and injury in refusing to perform it. As in the case of a verbal *51 -contract to sell land, equity only intervenes when it would be a fraud and injury not to enforce it. In such ease the chancellor will not permit a party to shield himself behind the statute.
Matthews v. Learner, 24 Ohio St. 615, is strongly relied on by plaintiffs in support of the claim that the parol agreement can be engrafted on the absolute deed, in this case.'
It was there held, that it was competent to establish by parol evidence, that an absolute deed was executed on the ■consideration, that the property conveyed was to be held in trust for the grantor and reconveyed on demand.
That was the case of a resulting trust coming within Lord Hardwicke’s third class, and the opinion so treats it.
The case was not placed on the mere ground of a breaeh •of an agreement to convey land, but on the fact that plaintiff had conveyed his property, and the trust assumed to hold and reconvey was the sole consideration.
It is said: x The trust does not arise on the mere agreement, but on the conveyance of the property for which the trust assumed was the sole consideration. The trust is not raised so much because of the fraud in the original acquisition of the property as in the subsequent refusal to execute the trust.”
In that ease the land belonged to the -plaintiff. He placed the legal title in defendant, and by verbal contract she was to recouvey on demand. She assumed the trust, .and it would have been unconscionable to allow her to retain the title thus acquired. Eor a breach of trust resulting in such injury to the plaintiff, when the defendant paid no consideration, the right to invoke equitable relief was ■clear. In that case the same equity arose as if the plaintiff had furnished the money to buy the land instead of furnishing the land itself.
In the case before us, as has been said, the only breach of the verbal contract consists in refusing to convey land bought with his own money. In such case, no resulting or ■constructive trust arises by operation of law, and there are *52 no such acts of fraud as takes the case out of the 5th section of the statute of frauds. The agreement was to buy land in his own name, and convey it to plaintiff. Before consummating the purchase, he repudiated his agency, and. refused to act as a trustee for plaintiff^ by refusing to receive his money or to act for him. Wherein does this differ from a verbal agreement to convey land already purchased ?
In coming to this conclusion, w-e assume that parol evidence is admissible to establish an express trust in case,of a deed absolute, wherever to refuse it would operate to-deprive the party of his property in the land, to which by law or equity, he is justly entitled.
In the present case, while the defendant has been guilty of a moral wrong, a breach of faith' in not conveying the land, yet it is but the repudiation of a parol contract, which has misled no one to his injury, nor defrauded any one out. of his money or property. Eor this reason the judgment should be affirmed.
II. Assuming that we are in error in this, still the judgment must be affirmed for the reason that no adequate indemnity was offered the defendant against his notes and. mortgage. By the terms of the agreement he was not entitled to a conveyance until this was done.

Judgment affirmed.