## Matthews, *in equity, versus* Light.

An agent, employed by the owner of land, to bid off the same when sold at auction for taxes, cannot, by taking the deed in his own name, acquire title to himself.

If one, having title to land by an unrecorded deed, make himself instrumental in causing another to purchase the same from a third person, such owner will not be permitted to set up his title as against such purchaser.

In order that a collector's deed of land, sold by him for taxes, shall convey title, it must appear that the provisions of law, preparatory to and authoritative of such sale, have been strictly complied with.

**Bill in equity.**

Its allegations, so far as they called for the action of the court in making up their opinion, were substantially *that*, in July, 1835, upon the defendant's assurance that he was the owner of a described lot of land, upon which were a stream of water and an old saw-mill, the plaintiff undertook to purchase the same, and to pay $200, cash in hand, and the balance in seven equal annual payments; the price of the land to be ascertained by the award of two disinterested persons,

one of whom was to be appointed by the defendant, and the other by the plaintiff; *that* the plaintiff appointed one Prescott, and that the defendant appointed Albert Cargill, and that the said referees set the land at $980, being twice its just value ; *that*, not suspecting any interest in said Cargill or any fraud in the defendant, he, the plaintiff, paid to the defendant the said $200, and gave his seven notes for the balance, as previously agreed ; and took therefor the defendant's bond to convey, when the notes should be paid ; *that* he made payments, including said $200, to the amount of $591, toward said purchase ; *that* he cleared out the stream, and erected upon the lot a new mill, which, with his other improvements, amounted to $2000 ; *that* he occupied the land till 1841, when the defendant took possession, and has since retained the premises, including all the erections and improvements made by the plaintiff, and has received rents and profits therefor at the rate of $200 per year ; *that* Cargill, the said appraiser, instead of being a disinterested man, (as was represented by the defendant, and believed by the plaintiff,) was in fact the owner of a large part of the premises, including the site of the mill ; *that* the residue of the land was owned by the heirs of one Pierce, and the defendant had no title whatever to any part of the lot ; *that* the defendant had full knowledge of said ownerships, and yet, intending to cheat the plaintiff, took the said $200 and said notes, and gave said bond, though knowing he had no title to the land ; *that*, within the said seven years, the plaintiff offered the defendant to pay him the amount due upon said notes, if the defendant would procure a title to be made to the plaintiff ; and afterwards, on the 26th of April, 1847, the plaintiff made a demand upon the defendant for the possession of the premises, and asked for an account of the rents and profits, and offered to pay what the balance might be, if any ; all of which was refused by the defendant, who denied that the plaintiff had any right or interest in the subject-matter.

The prayer of the bill is, *that* said defendant make answer on oath, &c., and *that* the said contract be declared void by

reason of the defendant's fraud and want of title; *that* the outstanding notes be canceled, and the purchase money, so far as the same had been paid, be refunded, and the amount, expended by the plaintiff in making the mill and other improvements, with the net rents and profits, be paid to the plaintiff; and *that* other suitable relief be given.

The substance of the answer, so far as the same became material to the decision, is stated in the opinion.

*Lowell,* for the plaintiff.

*Bulfinch,* for the defendant.

TENNEY J. —The plaintiff seeks a decree, to rescind the contract made by him with the defendant, for the purchase of the land described in the bill; a surrender of the outstanding note, given by him; a restoration of the money paid toward the original consideration, and that expended in the erection of the mill and other improvements, with interest on the same; also the rents and profits of the mill, since the defendant took possession, deducting the repairs made by him.

The bill charges, that the defendant never had any title to the land, the same being the property of others, which was well known to the defendant; that the southerly end of the same, being about forty-four acres and on which the mills stood, was the property of Albert Cargill, deceased, and the residue belonged to the heirs of Joseph H. Pierce, deceased; that the defendant fraudulently represented to the plaintiff, that he was the lawful owner of the land, and thereby induced the plaintiff, confiding in this representation, to enter into the contract for the purchase of the same; that the defendant fraudulently selected Albert Cargill, as a disinterested man, to estimate the value of the land with Jonathan Prescott, who was selected by the plaintiff for that purpose, knowing the said Cargill to be interested as the owner of a part of the land.

The answer denies all fraud; and alleges, that the defendant was the true and lawful owner of all the land described in the bill; that he acquired a title thereto, and was in posses-

sion thereof as early as the year 1812, before the town of Liberty was organized as a plantation ; that since the organization he and he alone has paid all the taxes upon the lot, which have always been assessed to him ; that he had the exclusive possession of the land till the year 1835, or about that time, and that no one then made any claim in derogation of his title ; that he was not apprised of any out-standing title whatever, when the contract was entered into between the parties to this suit ; 'that said Cargill had no title to any part of the premises ; but he was employed as the defendant's agent, to pay the taxes assessed to him in the town of Liberty upon the premises ; that the defendant furnished him with the money for that purpose ; that Cargill paid the taxes as he was employed. to do ; that by accident the collector's deed was made running to Cargill ; that the defendant paid the taxes, before the time of redemption run out ; and that Cargill never made any claim to the land, or supposed he had any title thereto during his life-time, and did not cause his deed to be recorded.

This part of the answer is responsive to the bill, so far as it charges fraud, and alleges a want of title in the defendant, and a title in others.   The proof tends to confirm, these allegations in the answer.   So far as it goes, it is corroborative of the statements therein of the defendant's exclusive and adverse, possession of the lot for more than twenty years, before the contract between the parties was made.   There is no evidence of title or possession of Joseph H. Pierce or his heirs, which can control or qualify the possession of the defendant.

The evidence touching the supposed title of Cargill, shows, that in bidding off the land, and in receiving the collector's deed, he acted as the authorized agent of the defendant, and made no claim in any manner to the premises in his own behalf.   Acting as the agent of the defendant, he could not take a title to himself, and the deed, if valid in other respects, would be inoperative in his favor.   *Pratt* v. *Thornton*, 28 Maine, 355.

But if the collector's deed had been received by Cargill

under such circumstances as to confer on him the benefit of the purchase at the collector's sale, his subsequent conduct as alleged in the bill would defeat his title to the land as against the plaintiff, even if the defendant had not caused redemption. By a well established and well known principle in equity, when he was instrumental in causing the plaintiff to expend his money, and to give his promissory note as a consideration for the land, ignorant of Cargill's claim, it was too late for the latter, to set up a title under his unrecorded deed to defeat the right, which the plaintiff had acquired from the defendant by his contract. " *Qui tacet consentire videtur.*" " *Qui potest et debet vetare, jubet.*" *Wardell* v. *Van Rensalaer*, 1 Johns. Ch. 344; *Storrs* v. *Barker*, 6 Johns. Ch. 166.

The plaintiff has produced no proof, that the collector's deed would have passed any interest to Cargill, if he had not been acting as the agent of the defendant in bidding off the land and taking the deed. The deed was from the collector of taxes of the town of Liberty, under a sale for the nonpayment of the sum assessed upon the lot. To make out a title in the purchaser, something more is required, than the production of the collector's deed, though in proper form. In such cases great strictness is necessary ; and it must appear, that the provisions of the law preparatory to, and authorizing such sales have been previously complied with. *Brown* v. *Veazie*, 25 Maine, 359. There has been no attempt to prove a compliance with these provisions, or to show, that the proceedings of the collector, which are essential to give effect to the deed, were such as the statute requires.

As the case is presented, Cargill had no interest in the land, which would have prevented the defendant, from giving a title, on the receipt of the sum stipulated in the contract. He claimed to have no right, which precluded him from being competent, according to the agreement of the parties, to act with Prescott in estimating the value of the land.

The whole case discloses, that a fair contract was entered into by the plaintiff for the purchase of the land from the de-

fendant. It may be true, that a value was placed upon the land, by those selected to make the appraisal, above its real and just worth. But this is probably imputable to the notions, which were then generally entertained in reference to such property, and not to any corrupt design of the defendant, or the appraiser selected by him. When the plaintiff became satisfied, that he had made an improvident contract, he attempted to give effect to some transactions which those interested therein and the parties to them had never contemplated, in order to relieve him from his obligations, and to obtain the money paid to the defendant, and expended upon the land, but these attempts have proved abortive.

*Bill dismissed with costs.*