Onson vs. Cown.

---

ONSON vs. COWN.

EQUITY: *Fraud—Defendant adjudged to hold land in trust for plaintiff.*

F., a purchaser of forfeited school land, refused to sell his certificate to L. until he had given C., the original owner, the refusal of it; and L. thereupon professed to apply in C.'s behalf, and with his knowledge, and, to secure a debt due from C. to an estate of which he (L.) was administrator, proposed to buy the certificate, and let C. have it on payment of said debt, the cost of the certificate, and his (L.'s) expenses; and F., expressly on the faith of these representations, sold L. the certificate for a sum less than its value. C. paid the debt due said estate, and offered to pay the cost of the certificate, and L.'s reasonable expenses. In a controversy between him and one who took a grant of the land with knowledge of his rights, *held,* that C. was entitled to a conveyance of the land on making such payments.

APPEAL from the Circuit Court for *Winnebago* County. Ejectment. The defense was, that in July, 1851, defendant purchased the land of the state as school land (part of

a sixteenth section), paying a part of the purchase money, and receiving the usual certificate, and thereupon entered upon the land, of which he has ever since been in possession; that he paid the interest and taxes until January 1, 1862; that during 1862, he delivered his certificate to one Tisman as collateral security, with his note to Tisman, for a loan of $100; that afterwards Tisman died, and one Larson was appointed administrator of his estate, and as such became possessed of said note and certificate; that by accident and mistake defendant neglected to pay to the state the interest due on the certificate for 1863, and the land was sold by the commissioners of school and university lands in December, 1863, and purchased by one Abel Keyes, who (it is alleged on information and belief) took in trust for defendant; that in April, 1864, Larson applied to Keyes and his agent, Fisher, representing that he was administrator of Tisman, and as such held a mortgage on the land in question, and wished to purchase Keyes' title for the sole purpose of securing the mortgage debt, and would hold the title as mortgagee of defendant, and re-convey to him whenever he should pay the Tisman debt, and also the amount paid to Keyes for the land, and expenses; and that upon the strength of these representations, and for the purposes named, Keyes assigned the certificate to Johanna, wife of said Larson, and Larson paid him $75 therefor; that afterwards, in 1864, defendant paid in full to Larson his note to Tisman, and tendered him $100 for the money paid to Keyes, with interest and expenses, and demanded of him a delivery of said certificate, which Larson refused; that afterwards, in July, 1865, Larson paid the state the balance of the purchase money of said land, and a patent therefor was issued to said Johanna; that afterwards Larson, with intent to defraud the defendant, caused said Johanna to convey the land to the plaintiff, who is her brother, who took with notice of defendant's

rights, and without paying any consideration, and fraudulently claims to be absolute owner of the land; and that defendant is ready and willing to pay to plaintiff or Larson any sum which may be found due either of them for moneys paid by Larson to Keyes, or to the state, with interest, and the expenses of perfecting the title. Prayer, for judgment that an account be taken, etc.; that upon payment by defendant of the amount found due to plaintiff, the latter convey the land to defendant; that all persons claiming under plaintiff after the commencement of this action, be barred, etc.; and for general relief. There was a reply in denial of those parts of the answer which tend to show that Larson or the plaintiff took title to the land in trust for the defendant.

The evidence, which was conflicting, need not be stated here. An objection by the plaintiff to the introduction of any evidence under the answer, on the ground that it did not state a defense, was overruled. After the evidence was all in, a motion by defendant for leave to amend his answer, so as to make it conform to the facts proved, was denied. The circuit court found the facts as to the negotiation between Larson and Fisher and Keyes, as alleged in the answer, with the further fact that Larson then promised that if Keyes' certificate were assigned to Johanna Larson, she would make the assignment to *Cown*, as he had agreed to do. It further found that there had been no arrangement between *Cown* and Larson, by which the former was to have any interest in said purchase, and no agreement between Keyes and *Cown* by which, under any circumstances, Keyes was to convey the land to *Cown;* that Keyes would not have made the assignment to Larson or his wife without having first given *Cown* an opportunity to purchase the land, but for Larson's representations to him; that plaintiff paid a valuable consideration for the land, but knew at the time of the conveyance to him that *Cown* was in possession

thereof, living on it with his family, and cultivating it; that *Cown* made the tender and demand to *Larson* alleged in the answer, and that Larson was then his wife's agent to transact business; and that before Larson's purchase of Keyes, *Cown* had notice of Keyes' purchase from the state, and had an opportunity of seeing him for the purpose of procuring his certificate, but neglected to do so. On these facts the court held the plaintiff entitled to recover possession of the land, and rendered judgment accordingly; from which the defendant appealed. ·

*Felker & Weisbrod*, for the appellant, to the point that Larson is estopped from setting up a title inconsistent with his declarations to Keyes, cited 1 Greenl. Ev., secs. 27, 210; *Freeman v. Walker*, 6 Greenl., 68. Contracts made for the benefit of another, but without his direction or knowledge, may be rejected or affirmed at his election. Dunlap's Paley, 171, note (o), and 324, and cases cited; 13 East, 274; *Fitzsimmons v. Joslin*, 21 Vt., 129; *State v. Perry*, Wright, 662; *Woodward v. Harlow*, 28 Vt., 338; *Schedda v. Sawyer*, 4 McLean, 181; 15 N. Y., 577, 580–83; 5 Hill, 107; 39 Barb., 140. Where the principal ratifies the act, the agent cannot set up a title adverse to that of the principal. If he takes the title in his own name, he will be held a trustee for the principal. *Saffords v. Hinds*, 39 Barb., 625; Willard's Eq., 189, 249; Dunlap's Paley, *ubi supra;* 1 Livermore on Pr. and Ag., 44.

*George Gary*, for respondent, contended, 1, that the answer did not set up a defense. (1.) The alleged agreement between Keyes and Larson was *nudum pactum*, being without consideration. (2.) "An express trust resting in parol cannot be enforced or recognized in a court of equity." *Orton v. Knab*, 3 Wis., 576; *Fairchild v. Rasdall*, 9 id., 379. (3.) A refusal to execute an agreement resting in parol is not such a fraud as will admit parol evidence.

*Fairchild v. Rasdall, supra;* Browne on Stat. Fr., § 439. (4.) If Larson had been employed by *Cown* to purchase for him, and had taken an assignment of the certificate to himself, and procured the patent, etc., still *Cown,* not having paid anything, would have no claim which a court of equity could recognize.   Story's Eq. Jur., § 1201 a.   2.  The plaintiff being entitled to judgment on his demurrer *ore tenus* (*Hays v. Lewis,* 17 Wis., 210), defendant's motion for leave to amend his answer came too late after the testimony was closed, which ought never to have been admitted (*Kilbourn v. Pacific Bank,* 11 Wis., 230); and a judgment in his favor ought not to be reversed for any error in findings based upon such testimony   3.  But the testimony and findings show that *Cown* had abundant opportunity to purchase the certificate from Keyes, and neglected to make any effort to do so; and equity will not relieve a party against the consequences of his own negligence.   4.  This is not a case for the application of the doctrine of estoppel.   If plaintiff would be estopped from denying that he purchased the certificate for defendant's benefit, in case his agreement to do so could be proved, still that agreement is incapable of proof by any competent legal evidence, being a parol declaration of a trust.   Again, an estoppel must bind both parties.   Co. Litt., 352 a (m); 2 Johns., 383; 3 Johns. Cas., 103.   How is *Cown* bound?

Cole, J.   We are entirely satisfied from the evidence in the case, that Fisher was induced to sell the school land certificate to Larson by the representations of the latter, that he was buying it for the benefit of the defendant.   The testimony of Fisher is very distinct upon this point, and although contradicted by Larson, still we are satisfied that he gives the correct version of the matter.   And he says that when Larson first applied to him to buy the certificate,

he told him that he could not sell it till he had seen *Cown*, and given him the first chance to buy it; that he always gave the original purchaser the refusal; that Larson then said he wanted to get the certificate for *Cown*, and that, in order to secure the debt due the estate for which he was administrator, he proposed buying the certificate himself, and letting *Cown* have it when he paid the Tisman debt, and what he, Larson, had paid for the certificate and his expenses. And Fisher further states, that he concluded to sell the certificate to Larson for $75.00, because he understood it was for *Cown's* benefit; and that he would not have let Larson have it if he had not represented that he wanted it for *Cown*, and that *Cown* knew of his coming for it; or if he had supposed the purchase was for the benefit of Larson, or for his wife's use. This is not the precise language of Fisher, but it is the substance of his testimony in regard to the representations made by Larson at the time he applied to him to purchase the certificate. Assuming, then, the facts to be as detailed by Fisher: that Larson purchased the certificate by representing that he wanted it for *Cown;* that Fisher was really induced by these representations to sell it to him, supposing it was for the benefit of *Cown*, and would not have sold it to Larson if he had supposed Larson was buying it for himself or for his wife; and the question arises, Can *Cown* avail himself of the purchase made under such circumstances? It is contended on behalf of the defendant, that although he had not employed Larson to buy the certificate for him, had no agreement with Fisher that he should have it, and advanced nothing towards its purchase, yet, as Larson procured the certificate by representing that it was bought for his benefit, and that he was acting in the matter as the agent of the defendant, and as Fisher intended that the defendant should have the chance to buy the certificate before he sold it to any one else, and

would not have sold it to Larson except for the representations he made at the time of the purchase, it would be a fraud to permit Larson to repudiate the character in which he assumed to act, and set up a title inconsistent with his statements made to Fisher. And it is said that a court of equity will treat Larson, and all purchasing from him with full notice of the defendant's rights, as a trustee of the defendant, and as holding the title for his benefit.

It appears to us that this is a correct view of the matter, and that it would be sanctioning a positive fraud, not to give the defendant the benefit of the purchase made by Larson of Fisher. For Fisher says, in the most unqualified manner, that he intended to give the defendant the first chance to buy the certificate, because he had originally owned the land, and that he would not have sold the certificate to Larson but for the representations the latter made that he was buying it for the benefit of the defendant. By these representations, Fisher was induced to sell him the certificate—an act injurious to the defendant, unless equity will treat the purchaser as trustee of the injured party. It seems to us the case is analogous to that class of cases mentioned by Mr. Justice STORY in sec. 256, Eq. Jur., where courts of equity grant relief for actual fraud. Says the author: "In the next place, the fraudulent prevention of acts to be done for the benefit of third persons. Courts of equity hold themselves entirely competent to take from third persons, and *a fortiori* from the party himself, the benefit he may have derived from his own fraud, imposition or undue influence in procuring the suppression of such acts. Thus, where a person had fraudulently prevented another, upon his death bed, from suffering a recovery at law, with a view that the estate might devolve upon another person, with whom he was connected, it was adjudged that the estate ought to be held as if the recovery had been per-

fected, and that it was against conscience to suffer it to remain where it was. So, if a testator should communicate his intention to a devisee, of charging a legacy on his estate, and the devisee should tell him that it was unnecessary, and he would pay it, the legacy being prevented, the devisee will be charged with the judgment. And, where a party procures a testator to make a new will, appointing him as executor, and agrees to hold the property in trust for the use of the intended legatee, he will be held a trustee for the latter, upon the like ground of fraud." In *Schedda v. Sawyer*, 4 McLean, 181, it was held that a person who assumes to act as agent in redeeming land sold for taxes, should be considered as having acted in that capacity, and could not take advantage of such act to obtain a title in his own name for the land, and, by a subsequent procedure, to perfect the title, but was answerable to those in whom the title rested in the character he first assumed. In this case Larson, by fraud and misrepresentation, induced Fisher to sell him the school land certificate, pretending he was acting for *Cown*, and was purchasing it for his benefit. It would seem contrary to every principle of morality and fair dealing, to allow Larson to secure the advantage of a purchase thus made, which he could not have made for his own benefit if Fisher had known that he so intended. It is said that the defendant had no interest in the land after it became forfeited to the state for the non-payment of interest, and that Fisher and Keyes bought it discharged from all equities in his favor. This may be so; but still they were willing to give him the first chance to purchase the school land certificate because he had once owned the land, whether he had any legal or equitable claim upon it or not. Suppose that they, moved by some feeling of kindness or generosity towards the defendant, were willing to give him the certificate, and had done so by transferring it to Larson as his

agent, who assumed to act for the defendant in the matter, would a court of equity permit the agent to repudiate the character in which he had pretended to act, and secure the gift for himself, because the defendant could not, by an action, have compelled them to give him the certificate? It seems to us immaterial whether the defendant could compel Fisher and Keyes to give him the first chance to purchase the certificate, or not. They intended to give him the preference—told Larson so—and were induced to sell it to Larson by the statements and representations which he made, that he was purchasing it for the defendant's benefit. It is clearly against good faith and equity to permit Larson to take advantage of his own fraud, and hold the certificate procured under such circumstances. We therefore think that upon the facts of the case the defendant was entitled to the relief demanded in the answer.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded with directions to give judgment accordingly.