## J. C. CAMERON AND WIFE v. CAROLINE E. LEWIS.

1. ATTORNEY AND CLIENT. *Fiducial relations. Attorney purchasing client's land.*

An attorney who has been employed to examine the title of a certain tract of land, with the view of ascertaining the condition of the land in respect to taxes, and to do whatever may be necessary to protect his client's title and interest in the land, is incapacitated, by reason of his fiducial relation to the property, to avail of information acquired in making such investigation, to have the title of the land in question, which he finds to be held by the State for taxes, conveyed to his wife and infant brother-in-law, either directly or indirectly.

2. SAME. *Attorney buying client's land. Trust arising. Statute of Frauds.*

Where an attorney, engaged by a verbal contract to protect a client's interest in a certain tract of land, takes advantage of information acquired by virtue of his engagement, and has the title to the land conveyed to members of his own family, in disregard of the interests of his client, the latter is not prevented by our Statute of Frauds, which requires that "all declarations or creations of trusts or confidence of or in any land shall be made and manifested by writing," from establishing a trust in the holders of the legal title for his benefit. Such a trust is covered by the proviso to sect. 2896 of the Code of 1871, which excepts all trusts that "arise or result, by implication of law, out of conveyances of land" from the operation of the Statute of Frauds, and leaves them subject to the unwritten law of equity.

APPEAL from the Chancery Court of Madison County.

Hon. E. G. PEYTON, Chancellor.

Caroline E. Lewis filed her bill in chancery against J. R. Clymer, J. C. Cameron, Laura Cameron, the wife of J. C. Cameron, Joseph J. Nicholson, Sr., and Joseph J. Nicholson, Jr. Cameron and his wife were the only defendants served

with process at the first term after the filing of the bill.   They filed a demurrer to the bill, which was overruled, and they appealed to this court.   The statements of the bill and the grounds of the demurrer are sufficiently stated in the opinion of the court.

*J. W. Jenkins*, for the appellants.

1. There was no valid express trust contained in Cameron's engagement with Mrs. Lewis, because the agreement was not in writing.   Code 1871, sect. 2896.

2. There could be no resulting trust in this case, for " no trust results from the breach of a mere parol contract, and parol proof cannot be received to establish a resulting trust in lands purchased by an agent and paid for by his own funds." *Miazza* v. *Yerger*, 53 Miss. 139.   There being no valid agreement to purchase, a trust could only result where the money used in the purchase belonged to the principal, and not to the agent.   *Gibson* v. *Foote*, 40 Miss. 790.

*Frank Johnston*, on the same side.

The appellee's bill sets up an express agreement between Cameron and herself that he should purchase the land for her ; but she did not provide any money for the purchase.   Such an agreement cannot be enforced.   *Miazza* v. *Yerger*, 53 Miss. 135.   Any trust springing out of an express agreement, contract, or understanding not in writing, is void under the Statute of Frauds.   *Gibson* v. *Foote*, 40 Miss. 792 ; 1 Dick. 44 ; 1 Coxe, 15 ; Hill on Tr. 96 ; *Botsford* v. *Burr*, 1 Johns. Ch. 406 ; *Moore* v. *Green*, 3 B. Mon. 407.

*Nugent & Mc Willie*, for the appellee.

1. An attorney intrusted with the business of a client cannot make that business an object of profit to himself, to the detriment of his client's interest.   *Howell* v. *Baker*, 4 Johns. Ch. 118.   The relation between Cameron and Mrs. Lewis imposes upon him the burden of showing that the transaction in question was in all respects fair.   *Jennings* v. *McConnel*, 17 Ill. 148 ; *Hawley* v. *Cramer*, 4 Cow. 717 ; *Howell* v. *Ransom*,

11 Paige, 538. It is much more necessary for him to show fairness as he is directly charged with fraud.

2. An attorney who has been consulted respecting the title to lands cannot afterwards purchase such lands from the State, or a third party, and set up such title against his client; nor can he purchase any outstanding title and set it up in opposition to his client. *Galbraith* v. *Elder*, 8 Watts, 81 ; *Hockenbury* v. *Carlisle*, 5 Watts & S. 348 ; 25 Pa. St. 354.

SIMRALL, C. J., delivered the opinion of the court.

The case stated in the bill is this : Caroline E. Lewis, on the 22d November, 1875, through her attorney in fact, Jesse R. Powell, sold the land in question to J. R. Clymer, for $2,060, on a credit, taking three notes for the instalments, to mature respectively 1st December, 1876, 1877, and 1878. The legal title was retained until final payment. Clymer was at once let into possession, and has held the land ever since the sale.

In October, 1876, Mrs. Lewis became apprehensive that the land had been sold for taxes. Her allegation is, " forfeited for taxes, and in the hands of other parties."

To protect her interests, she employed the defendant, J. C. Cameron, a near neighbor, and her confidential agent and attorney, to go to Canton, the county-seat, " and ascertain the condition of the land as to taxes, and do every thing to protect her interests," and redeem the same if sold for taxes.

The investigation disclosed that the land had been sold to the State for non-payment of the taxes.

J. C. Cameron communicated the information as to the *status* of the title to his father-in-law, Joseph J. Nicholson, Sr., and thereupon they came to an understanding that Cameron should furnish the money, Nicholson become the purchaser from the State, and the title be placed in Cameron's wife and her infant brother, Joseph J. Nicholson, Jr., the daughter and son of Nicholson, Sr.

This arrangement between Cameron and Joseph J. Nichol-

son was carried out. The relief sought by the bill is, that
the conveyance from the State to Mrs. Cameron and her
brother may be cancelled, so that the title of Mrs. Lewis
may be disembarrassed.

The case may be reduced to the abstract proposition,
whether J. C. Cameron stood in such confidential relation to
Mrs. Lewis as disqualified him from purchasing a title antago-
nistic to that of his principal, or confederating with others
in the acquisition of such title.

The allegation, in effect, is, that he imparted the knowledge
which he had obtained as to the condition of the title, and
at once formed the plan, and carried it into effect, by which he
supplied the money, and the purchase was made from the
State, and the deed executed to his wife and infant child.
We do not pause to support the position by authority, that
Mrs. Cameron and her child occupy no higher or better posi-
tion than would Cameron if he had taken the title in his own
name.

Will a court of equity permit an agent and attorney, who
has accepted an employment to examine a title, and do in the
premises whatever may be necessary for its security and estab-
lishment, to avail of information acquired in the prosecution
of the inquiry, which points to a better outstanding title, to
place such title, by purchase, in members of his own family?
The courts have made no uncertain response to that ques-
tion.

The principle (of extensive application) has been declared
in various forms of expression, — as, "Those who have a
duty to perform for others, should not, in the discharge of that
duty, deal for themselves."

In *Hall* v. *Hallett*, 1 Cox, 134, Lord Thurlow said:
"No attorney can be permitted to buy in things in a course
of litigation, of which he has the management. Within the
principle are purchases by assignees in bankruptcy, their
agent, or attorney." *Ex parte Hughes*, 6 Ves. 617; *Ex parte
James*, 6 Ves. 337.

*Reid* v. *Stanley*, 6 Watts & S. 376, and *Henry* v. *Raiman*, 25 Pa. St. 358, 359, are strikingly similar to the case before us. In the former, R. was employed to make an examination of B.'s title to the lot on which he had made improvements. R. discovered that B. had, by mistake, made the improvements on a lot which belonged to one P. R., without making known his discovery to B., his principal, bought the lot from P. The ruling was, that he could not avail himself of knowledge thus obtained, and that his purchase of the adverse title inured to the benefit of B. and his vendees. In the other case, the adverse title was bought in by the attorney, and was attempted to be asserted against the client. The court say the rule applies with stronger force against a professional adviser, " who is an officer of the court, created and recommended to public confidence by the law, and put under the sanction of an oath of fidelity to all in whose service he may be engaged." These considerations increase confidence in an attorney, and greatly strengthen the force of his obligation to clients.

The disability of the attorney to make any advantage or profit at the expense of the client, founded as it is in the wisest policy, has been carried so far in the courts of Pennsylvania, that a purchase of the adverse title, after the relation of client and attorney has ceased, is equally forbidden as a purchase made while the relation existed. *Galbraith* v. *Elder*, 8 Watts, 81.

The case of *Winn* v. *Dillon*, 27 Miss. 496, 497, emphatically supports the doctrine. Dillon had engaged to give Winn the benefit of his knowledge of the public lands, to enable him to make prudent entries. "That," said the court, "created the relation of private trust and confidence, which disabled Dillon from doing any act or acquiring any interest in the property adverse to the interest of Winn." Citing Story on Ag., sect. 211. Another illustration of the principle in this court is *Murphy* v. *Sloan*, 24 Miss. 659, *et seq*.

But it is said that Mrs. Lewis is attempting to set up a

parol trust, notwithstanding the Statute of Frauds requires a writing, sealed, declaratory of it. It is said that as Cameron was employed by parol, without writing, to transact the business for Mrs. Lewis, he cannot be compelled to surrender the title procured to be placed in members of his family, on the idea that they hold in trust for her, for that would be to establish a trust without a writing.

But does not the objection rest upon a misconception of the statute? See proviso to sect. 2896, which excepts altogether trusts that "arise," or "result" by implication of law, out of a conveyance of lands, from the necessity of being written and sealed; or, the more correct expression would be, that such trusts are left under the operation of the unwritten equity law.

The exception would be wholly inoperative if it were necessary to give written evidence of the facts from which the trust is implied; hence there is to be found in the reports numerous cases where a trust has been declared in favor of the principal against the agent, without adverting to whether the agency was in writing or not. See a partial collection of them in 1 White & Tudor Ld. Cas. 262.

Nice distinctions have been drawn in many cases, in connection with and suggested by the prohibition of the Statute of Frauds. Perhaps the refinements would not have been resorted to if the exceptions in the several statutes considered had been as broad as ours, or if the full import of the exception had been realized.

The first part of the section referred to embraces *express* trusts, — as, where A. makes a contract with B. that B. shall have some beneficial interest in land which A. already owns, or is about to purchase. Such contract must be in writing, sealed, etc. The proviso leaves implied trusts unchanged, to be dealt with as though the Statute of Frauds had never been passed. Trusts which a court of equity has been accustomed to fasten on the conscience of a party, because of a breach of faith to some duty which he was under for another, or some advantage

he has gained by virtue of a confidential relation, are constructive trusts, or implications of equity, and are not necessary to be evidenced by a sealed writing.

The principle in full vigor is absolutely essential to enforce honesty and good faith in all the relations of business, where one man assumes to act as agent or attorney for another ; not that the same redress will be afforded in every case, but that a court of equity, if the case is proper for its cognizance, will give adequate relief.

One application of it is, where the agent or attorney avails of information which he has acquired in the course of his fiducial connection with the principal, as a means to buying for himself, when his duty was to do the same act for his principal, or to give him the opportunity to do so.

Another illustration is, where the agent or attorney is under special instructions or engagement to examine the title, and do whatever is necessary to establish and perfect it, and, instead of that, takes such measures as destroy the right of the principal, and vest the title in himself.

In each of these cases, and all others falling properly within the just range of the principle, a court of equity, to do complete and adequate justice, will declare that the agent or attorney acquired the title for his principal, deal with him as a constructive trustee, and compel a surrender.

The trust, if it arises at all, must result or be implied from the "conveyance," — that is, from all the circumstances attending the conveyance as the culminating act. And these must be such that, in the estimation of a court of equity, it would be unconscionable for the party to retain the title.

The fiducial relation may have its inception in the operation of law, — as that of the executor, administrator, and guardian ; or it may be created by contract, — as that of the trustee, agent, or attorney. However it may have originated, if the party who sustains it is unfaithful, puts himself in an adverse position to those whom he represents, and uses information obtained, or by other means buys a paramount title to that of his principal,

a court of equity will deduce the implication, from the whole transaction, of a trust *in invitum*.  So that, in very truth, the trust is not deduced from the contract, but is implied from the conveyance, — regarding the conveyance as the final consummation of the unfaithful scheme and conduct to acquire the title.

It was right, therefore, to put the defendants to answer. Decree overruling demurrer affirmed.

