## E. D. ROSE v. CHARLES HAYDEN.

PRINCIPAL AND AGENT; *Statute of Frauds; Resulting Trust.*  Where a person desiring to purchase a piece of land employs by parol a firm of land agents to negotiate for the purchase of the land for him, and the member of the firm who does the business commences such negotiations, but finally, and in violation of his duties as agent, purchases the property for himself, with his own money, and takes the title thereto in his own name; and afterward the principal tenders to the agent an amount of money equal to the purchase-money, and an additional amount sufficient to compensate the agent for all his services, and also tenders a deed for the land for the agent to execute to the principal, and demands of the agent that he shall execute the same, but the agent refuses, and claims to own the land himself, *held*, under these facts, and by operation of law, that the agent holds the legal title to the land in trust for his principal; that the principal holds the paramount equitable title thereto, and by keeping his tender good may recover the property in an action in the nature of ejectment; and this notwithstanding the statute of frauds, and the fact that the employment of the agent was only in parol, and the further facts that the principal did not advance the purchase-money, and has never been in the possession of the property, nor made any improvements thereon; that the case is not one of the creation of an express trust either by parol or in writing, nor one of the express transfer of any interest in real estate either by parol or in writing, but is simply a

case of resulting trust, brought into existence by the operation of law upon the facts of the case; and that the case does not come within the statute of frauds; and that the authority of the agent for the purpose for which he was employed need not be in writing.

*Error from Jackson District Court.*

EJECTMENT, brought by *Hayden* against *Rose.* Trial by the court, at the July Term, 1884, and judgment for plaintiff. The defendant brings the case to this court. The opinion states the material facts.

*J. H. Keller,* for plaintiff in error.

*Hayden & Hayden,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of ejectment, brought by Charles Hayden against E. D. Rose for the recovery of lots numbered 100 and 102, on Wisconsin avenue, in the city of Holton. The case was tried before the court, without a jury, and the court made a general finding in favor of the plaintiff and against the defendant, and rendered judgment accordingly; and to reverse this judgment the defendant brings the case to this court.

In the court below the plaintiff claimed to hold the absolute title, legal and equitable, to lot No. 100, and claimed to hold the paramount equitable title to lot No. 102, admitting that the defendant held the legal title to that lot, but claiming that the defendant held such title in trust for the plaintiff; on the other side the defendant claimed to hold the entire title, legal and equitable, to both the lots. The facts of the case appear to be substantially as follows: In September, 1883, Mary Dihle owned the patent title to both the lots in controversy, and the plaintiff, desiring to purchase the same, employed as his agents in the negotiations therefor the defendant and J. H. Chrisman, who were partners doing business at Holton, Kansas, as real estate agents, under the firm-name of Rose & Chrisman. Pursuant to this employment, Rose & Chrisman wrote to Mrs. Dihle, and ascertained that her price for the

lots was $150, which fact they reported to the plaintiff. In the meantime the plaintiff had learned that there was an outstanding tax title on lot No. 100, which fact he communicated to his agents, Rose & Chrisman, and instructed them to write again to Mrs. Dihle, informing her of that fact, and instructed them to ascertain from her whether she would not take less than $150 for her title to the lots. This they agreed to do. The entire agreement between the plaintiff and Rose & Chrisman was in parol. The plaintiff then purchased the outstanding tax title to lot No. 100, and had the deed therefor executed to S. K. Linscott, and the plaintiff then left the state and was absent for about three weeks. On his return he called upon the defendant, Rose, to ascertain what had been done concerning the lots, and Rose then informed him that he had purchased the lots for himself, taking the deed therefor in his own name, and had paid therefor $85. The plaintiff then informed Rose that he owned the outstanding tax title on lot No. 100; that although the title was in Linscott's name, yet that Linscott had no real interest therein, but simply held the title to the lot for the benefit of the plaintiff. The plaintiff then tendered to Rose $110, and also tendered to him a deed, and demanded that he should convey the title to the lots to the plaintiff; but Rose refused. Afterward, and on October 30, 1883, Linscott executed a quitclaim deed for lot No. 100 to the plaintiff, and the plaintiff then brought this action for the recovery of both the lots. The plaintiff has at all times kept his tender good.

In this state, the action of ejectment is an equitable remedy as well as a legal remedy, and in such action the party holding the paramount title, whether legal or equitable, or both, or partly one and partly the other, may recover. The only question, then, for us to consider in this case is, which has the paramount title to the property in controversy — the plaintiff, or the defendant? That the defendant with his partner was the agent of the plaintiff to carry on negotiations for the purchase of the lots in controversy for the plaintiff, there can be no question, and but little question

*Ejectment; nature of action.*

as to the nature and character of the agency. The defendant, with his partner, was simply to carry on negotiations for the purchase of the lots, under the directions and instructions of the plaintiff and for the plaintiff. Under such circumstances, could the defendant purchase the property for himself, in his own name and with his own money, and take the title to himself, without becoming a trustee for the plaintiff, at the option of the plaintiff, and holding the legal title to the property merely in trust for the plaintiff, and until the plaintiff should repay him the amount which he had expended in the purchase of the property and reasonable compensation for his services? Except for the statute of frauds, which we shall hereafter consider, we think he could not. (*Krutz v. Fisher*, 8 Kas. 90; *Fisher v. Krutz*, 9 id. 501; *Lees v. Nuttall*, 1 Russ. & M. Ch. 53; same case, on appeal, 2 Myl. & K. Ch. 819; *Taylor v. Salmon*, 4 Myl. & Cr. Ch. 134; *Heard v. Pilley*, 4 Ch. Ap. L. R. 548; *Massie v. Watts*, 10 U. S. 148; *Winn v. Dillon*, 27 Miss. 494; *Wellford v. Chancellor*, 5 Gratt. 39; *Church v. Sterling*, 16 Conn. 388; *Rhea v. Puryear*, 26 Ark. 344; *Sweet v. Jacocks*, 6 Paige's Ch. 355, 364; *Matthews v. Light*, 32 Me. 305; *McMahon v. McGraw*, 26 Wis. 615; *Barziza v. Story*, 39 Tex. 354. See also the various cases hereafter cited.)

But can the statute of frauds make any difference? Under the authorities cited by the defendant, plaintiff in error, he claims that it not only can but does. Under such authorities he claims that the plaintiff has no remedy and is not entitled to any relief. The following are the principal authorities cited by the defendant: 2 Sugden on Vendors, ch. 21, § 1, ¶ 15, 8 Am. ed. from the 14 Eng. ed.; 2 Story on Eq. Jur., § 1201a; *Bartlett v. Pickersgill*, 1 Eden, 515; same case, 4 East, 577, in note to *King v. Boston; Burden v. Sheridan*, 36 Iowa, 125; *Allen v. Richard*, 83 Mo. 55; *Botsford v. Burr*, 2 Johns. Ch. 405; *Nixon's Appeal*, 63 Pa. St. 279; *Steere v. Steere*, 5 Johns. Ch. 1; *Perry v. McHenry*, 13 Ill. 227; *Walter v. Klock*, 55 id. 362; *Watson v. Erb*, 33 Ohio St. 35; *Pinnock v. Clough*, 16 Vt. 500; *Hidden v. Jordan*, 21 Cal. 92.

Agent, trustee for principal.

Under the authorities cited by the plaintiff, it is claimed that the statute of frauds makes no difference. It is claimed that with or without the statute of frauds a trust resulted by operation of law in favor of the plaintiff, and that the defendant simply holds the legal title to the property in trust for the plaintiff. The principal authorities cited by the plaintiff, in addition to those which we have already cited for him, are the following: *Chastain v. Smith,* 30 Ga. 96; *Cameron v. Lewis,* 56 Miss. 76; *Gillenwaters v. Miller,* 49 id. 150; *Sandford v. Norris,* 4 Abb. (N. Y.) App. Dec. 144; *Parkist v. Alexander,* 1 Johns. Ch. 394; *Wood v. Rabe,* 96 N. Y. 414; *Burrell v. Bull,* 3 Sandf. (N. Y.) Ch. 15; *Bennett v. Austin,* 81 N. Y. 308; *Hargrave v. King,* 5 Ired. (N. C.) Eq. 430; *Kendall v. Mann,* 93 Mass. 15; *Jackson v. Stevens,* 108 id. 94; *McDonough v. O'Niel,* 113 id. 92; *Sandfoss v. Jones,* 35 Cal. 481; *Snyder v. Wolford,* 33 Minn. 175; *Soggins v. Heard,* 31 Miss. 426; *Seichrist's Appeal,* 66 Pa. St. 237; *Peebles v. Reading,* 8 Serg. & R. 484; *Onson v. Cown,* 22 Wis. 329; *Bryant v. Hendricks,* 5 Iowa, 256; *Bannon v. Bean,* 9 id. 395; *Judd v. Moseley,* 30 id. 424; *Jenkins v. Eldredge,* 3 Story, U. S. C. C., 183, 288 to 290; *Baker v. Whiting,* 3 Sumner, 476, 482, *et seq.; Rothwell v. Dewees,* 67 U. S. 613; *Cave v. Mackensie,* 46 L. J. Ch. Div. 564; 37 L. T. N. S. 218; Fisher's Eng. Digest for the year 1877, 400; *McCormick v. Grogan,* 4 Eng. & Irish Appeals, L. R. 97; *Bond v. Hopkins,* 1 Sch. & Lef. (Eng.) 433; *Dale v. Hamilton,* Hare's Ch. (Eng.) 369.

The statute of frauds upon which the defendant relies will be found in §§ 5 and 6 of the act of the legislature of Kansas relating to frauds and perjuries. The statute, so far as it is necessary to quote it, reads as follows:

"SEC. 5. No leases, estates, or interests, of, in or out of lands, exceeding one year in duration, shall at any time hereafter be assigned or granted, unless it be by deed or note, in writing, signed by the party so assigning or granting the same, or their agents thereunto lawfully authorized, by writing, *or by act and operation of law.*

"SEC. 6. No action shall be brought whereby to charge a party, . . . upon any contract for the sale of lands, ten-

ements, or hereditaments, or any interest in or concerning them, . . . unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized."

The statute relating to trusts and powers, so far as it is necessary to quote it, reads as follows:

"SEC. 1. No trust concerning lands, *except such as may arise by implication of law*, shall be created, unless in writing, signed by the party creating the same, or by his attorney thereto lawfully authorized in writing."

The statute relating to conveyances, so far as it is necessary to quote it, reads as follows:

"SEC. 8. Declarations or creations of trust or powers, in relation of real estate, must be executed in the same manner as deeds of conveyance; *but this provision does not apply to trusts resulting from the operation or construction of law.*"

It will be seen from a reading of § 5 of the act relating to frauds and perjuries, § 1 of the act relating to trusts and powers, and § 8 of the act relating to conveyances, that all interests in real estate which may arise or be created "by act and operation of law," or which "may arise by implication of law," and "trusts resulting from the operation or construction of law," are not within the statutes requiring a writing for the creation of interests in real estate; and hence it would seem that these statutes cannot apply to the present case; for the plaintiff in the present case does not claim to have any interest in the real estate in controversy, except such as arises by operation of law. He does not claim any interest in the real estate in controversy by virtue of *the express terms* of any contract, written or oral. There was no contract, written or oral, that purported to transfer the property, or any interest therein, to the plaintiff. Nor did the plaintiff employ the defendant to take or hold the title to the property, either for the plaintiff or for the defendant, nor with or without the defendant's own money. He simply employed the defendant by a simple parol contract to negotiate for the purchase of the real estate

for the plaintiff, and of course the plaintiff expected to pay for it himself, and to take the title to himself, and to take such title by a formal and valid written instrument; and when the defendant took the title in the defendant's own name, instead of following the terms of the contract between himself and the plaintiff, he violated the terms of his contract, and abused the confidence reposed in him by the plaintiff. Under the contract as it was actually made, (and it was a parol contract which did not in terms give the property to the plaintiff,) and under the facts and circumstances connected with the contract, and with the parties to the contract before and afterward, and with the property in dispute, all that the plaintiff claims is merely that which results to him through the operation of law. We think it is clear that §5 of the statute of frauds cannot apply to this case. But can §6 of the statute of frauds so apply? It is difficult to see how even §6 can apply. The contract between the plaintiff and the defendant, constituting the defendant the agent of the plaintiff, was not "a contract for the *sale* of lands, tenements or hereditaments, or any interest in or concerning them," but it was simply a contract making the defendant *an agent* to negotiate for the *purchase* of lands, tenements and hereditaments, and interests in and concerning them; and while §5 of the statute, which contemplates an absolute transfer of an interest in real estate, requires that the authority of an agent, empowered to transfer the same, shall be in writing, yet §6 of the statute, which merely contemplates a *simple contract* for the future transfer of some interest in real estate, does not require that the authority of the agent shall be in writing. There is a marked distinction between the language of the two sections. Even a contract giving authority to an agent to make a contract for the *sale* of real estate need not be in writing, under §6. (1 Reed on Statute of Frauds, §379, and cases there cited; *Rottman v. Wasson*, 5 Kas. 552; *Butler v. Kaulback*, 8 id. 669, 675, 676; *Ayres v. Probasco*, 14 id. 187, 188.) And certainly a contract authorizing an agent to make a contract for the *purchase* of real

*Statute of frauds, case not within.*

estate need not be in writing.    In our opinion, neither § 5 nor § 6 of the statute of frauds can apply to this case.

The principal defect, as we think, in the reasoning of the defendant, is in his not making any distinction between trusts or interests in real estate which are *expressly created* by the terms of the parol contract itself, and trusts or interests which arise from facts and circumstances which sometimes include a parol contract, but which arise from such facts and circumstances only by implication or operation of law; and the authorities which he cites are, so far as they are applicable to this case, and so far as they maintain the doctrine which he urges, alike defective; and indeed, we do not think that they truly state the law.    The defendant and his authorities also make the mistake of supposing that the statute of frauds may be used as an instrument of fraud.    Such was not the intention of the legislature.    The intention of the legislature in enacting the statute was to prevent fraud, and the statute should be enforced in its spirit and not merely as to its letter.

The first and leading case upon which the doctrine of the defendant rests is the case of *Bartlett v. Pickersgill*, reported in 1 Eden, 515, and 4 East, 577; but the authority of that case has been denied, and we think overruled, even in England.    It was decided in 1760, and in 1829 it was held, in the case of *Lees v. Nuttall*, 1 Russ. & M. Ch. 53, that "if an agent employed to purchase an estate becomes the purchaser for himself, he is to be considered as a trustee for his principal." And this case was affirmed in 1834, in *Lees v. Nuttall*, 2 Myl. & K. Ch. 819; and this was a case where the agency was created wholly and entirely by parol.    In the case of *Heard v. Pilley*, 4 Ch. Ap., L. R., 548, 552, which was decided in 1869, it was held that "a contract for the purchase of land made by an agent will be enforced, although the agent be appointed merely by parol;" and in that case Lord Justice Selwyn used the following language:

"I cannot at all accede to the argument urged in reply, that under these circumstances when the agent goes to the principal and says, 'I will go and buy an estate for you,' it is not a

8 — 35 KAS.

fraudulent act on his part afterward to buy the estate for himself and to deny the agency. I think that would be an attempt to make the statute of frauds an instrument of fraud."

In the same case Lord Justice Gifford used the following language:

"I cannot help adding, as regards the case of *Bartlett v. Pickersgill*, that it seems to be inconsistent with all the authorities of this court which proceed on the footing that it will not allow the statute of frauds to be made an instrument of fraud."

In the case of *Bond v. Hopkins*, 1 Schoales & L. 433, which was decided in 1802, the Lord Chancellor uses the following language:

"The statute of frauds says that no action or suit shall be maintained on an agreement relating to lands which is not in writing, signed by the party to be charged with it, and yet the court is in the daily habit of relieving, where the party seeking relief has been put into a situation which makes it against conscience in the other party to insist on the want of writing so signed, as a bar to his relief."

In the case of *Cave v. Mackensie*, above cited, which was decided in 1877, it was held that—

"A contract for the purchase of land made by an agent in his own name, vests the equitable estate in the principal, and may be established by him against the agent and persons claiming under him, although the agent is appointed merely by parol."

See also the other English and Irish cases above cited. On the other hand, Mr. Sugden, in his work on Vendors, vol. 2, ch. 21, § 1, ¶ 15, 8th Am. ed., from the 14th Eng. ed., follows the case of *Bartlett v. Pickersgill*, and uses the following language:

"Where a man merely employs another person by parol as an agent to buy an estate, who buys it for himself and denies the trust, and no part of the purchase-money is paid by the principal, and there is no written agreement, he cannot compel the agent to convey the estate to him, as that would be directly in the teeth of the statute of frauds."

Upon the authority of Mr. Sugden, and the case of *Bartlett v. Pickersgill*, Mr. Story, in his work on Equity Jurispru-

dence, vol. 2, § 1201*a*, uses very nearly the same language as Mr. Sugden. Mr. Story's statement was inserted in his work on Equity Jurisprudence as early as 1843, and it may have been inserted therein at an earlier period of time. And while it may be good law as long as it is confined to *parol express trusts,* it cannot be good law if it be extended to trusts arising merely by implication or operation of law. The objection to this statement is that its language is too broad and covers cases which cannot properly come within its terms. The following from Mr. Story, enunciated by him at a later period of time, more truly states the law. In 1844, Mr. Story, as judge of the U. S. circuit court for the first circuit, and in the case of *Jenkins v. Eldredge,* 3 Story, 289, 290, uses the following language:

"It appears to me that here a confidential relation of principal and agent did exist; and that being once shown, it disables the party from insisting upon the objection, that the trust is void, as being by parol. The very confidential relation of principal and agent has been treated as for this purpose, a case *sui generis.* It is deemed a fraud for an agent to avail himself of his confidential relation to drive a bargain, or create an interest adverse to that of his principal in the transaction; and that fraud creates a trust, even when the agency itself may be, nay, must be, proved only by parol. *Bartlett v. Pickersgill,* (1 Eden, R. 515;) S. C. 1 Cox R. 15; 4 East, R. 577*n,* and *Leman v. Whitley,* 4 Russ. R. 423, are, I admit, against this doctrine,—not wholly, but to a limited extent; for the latter case excludes a case of fraud. But then *Lees v. Nuttall* (1 Russ and Mylne, R. 53) expressly decides, that if an agent employed to purchase an estate, purchase for himself, and on his own account, he becomes a trustee for the principal. In that case the whole agency and trust was made out by parol, and the purchase was from a third person. *Carter v. Palmer* (11 Bligh, R. 397, 418, 419) goes the full length of the same proposition."

Also, Mr. Browne, in his work on Frauds, § 96, uses the following language:

"It seems to have been held that where, in a case of trust arising upon an agency, the defendant's answer denied the fact of agency, parol evidence was inadmissible to prove it; but the later English cases favor a contrary doctrine."

(See also Browne on Frauds, § 84.)

In the case of *Chastain v. Smith*, 30 Ga. 96, 97, it was held that —

"Where one person agrees, as agent, to buy land for another as his principal, and does buy it, but takes the title in his own name, this title in his hands stands affected with a resulting trust for the benefit of the principal by operation of law, and the case is not within the statute of frauds, resulting trusts being expressly excepted from the operation of the statute."

. And Mr. Justice Stephens, in delivering the opinion of the court, uses the following language:

"The only question presented in this case is, whether or not the statute of frauds is in the way of the specific performance prayed by Mr. Chastain.    In the first place, this case was never within the statute of frauds.  The substance of the agreement, so far as that particular part of the land to which Mr. Chastain seeks a title is concerned, is that the Smiths would, *as his agent, buy it for him.*    They did, in fact, buy it, but took a title to themselves.    This title in their hands was immediately affected with a resulting trust for his benefit by operation of law.    Now, a trust raised, or resulting by operation of law, is expressly excepted from the operation of the statute, and this case therefore was not within the statute from the beginning."

In the case of *Wood v. Rabe*, 96 N. Y. 414, 425, 426, Judge Andrews, in delivering the opinion of the court, uses the following language:

"There are two principles upon which a court of equity acts in exercising its remedial jurisdiction, which taken together, in our opinion, entitle the plaintiff to maintain this action.    One is that it will not permit the statute of frauds to be used as an instrument of fraud; and the other, that when a person through the influence of a confidential relation acquires title to property, or obtains an advantage which he cannot conscientiously retain, the court, to prevent the abuse of confidence, will grant relief.  .  .  .  .    The principle, that when one uses a confidential relation to acquire an advantage which he ought not in equity and good conscience to retain, the court will convert him into a trustee, and compel him to restore what he has unjustly acquired, or seeks unjustly to retain, has frequently been applied to transactions within the statute of frauds."

It seems to be admitted by the defendant, and also by the authorities which he cites, that where the principal advances

the purchase-money to the agent, and the agent then purchases the property in his own name and for himself, a trust would result in favor of the principal, and the agent would hold the property merely in trust for the principal.   But the defendant claims, and the authorities cited by him seem to sustain him, that as the plaintiff in this case did not advance any of the purchase-money, and that as the defendant purchased the property with his own money, no such resulting trust has arisen or could arise.   Of course where the purchase-money is advanced by the principal to the agent, and the agent then purchases the property with his principal's money, and in his own name, it makes out a stronger case of resulting trust than where the agent himself advances the purchase-money; but the fact that the principal advances the purchase-money cannot be the controlling fact in the case.   Many authorities hold that where the agent furnishes the purchase-money with the consent of the principal, it will be considered as a loan, and the agent will hold the property purchased in trust for his principal, and as a security to himself for the money advanced by him. (*Kendall v. Mann*, 93 Mass. 15; *Sandfoss v. Jones*, 35 Cal. 481; *Soggins v. Heard*, 31 Miss. 426.)   Also, in many cases, the principal may have an interest in the property before he employs the agent to make the purchase, and may simply employ the agent to purchase for the principal an outstanding adverse title, for the purpose of bolstering up or protecting the principal's own title.   This outstanding adverse title may be very good or very bad; but whether good or bad, the doctrine cannot at all be tolerated that the agent may, in violation of his duties as agent, purchase for himself the outstanding adverse title, and hold the same adversely to his principal, merely because his principal has not advanced the purchase-money, when, in fact, at the time of the employment of the agent the amount of the purchase-money could not be at all known.   The question of the advancement of purchase-money in such a case should not have much weight.   And in this connection it might be well to remember that the plaintiff in this case had an interest in the property in controversy at

the time when the defendant purchased the same, although it is possible that the defendant may not have known of such interest. The plaintiff held a tax title in the name of S. K. Linscott, on one-half of the property in controversy, to wit, on lot No. 100, at the time the defendant purchased the two lots. And here the question may arise: Is it material whether the defendant did have any knowledge of the plaintiff's interest in the property, or not? Was the plaintiff bound to divulge his interest in the property to his agent, in order to protect his own rights and interests as against his own agent, and to prevent his own agent from acting adversely to him, and from perpetrating a fraud upon him? This question must certainly be answered in the negative. The principal is entitled to the services which the agent has agreed to perform, without divulging to the agent all his reasons and the necessities which prompted him to make the employment. A contract which has for its object the *actual sale* of real estate and the *transfer of the title* thereto by the terms of the contract itself, is of course within the statute of frauds, and it is generally held in such a case that the payment of the purchase-money alone cannot take the contract out of the statute of frauds. (4 Kent's Com., p. 451, Browne on the Statute of Frauds, § 461.) In such a case, the payment of the purchase-money does not seem to count for much. Something else must be done in order to take the contract out of the statute. And we do not think that the payment or non-payment of the purchase-money in this case should count for much. We think the trust nevertheless resulted. The controlling question in this case is not whether the principal ad-advanced the purchase-money or not, but it is whether in equity and good conscience the agent who in fact purchased the property with his own money in his own name, in violation of his agreement with his principal and in abuse of the confidence reposed in him by his principal, can be allowed to retain the fruits of his perfidy. The weight of authority is, we think, that he cannot. (*Sandford v. Norris*, 4 Abb. N. Y. Ct. of App. 144; *Wellford v. Chancellor*, 5 Gratt. 39; *Onson v. Cown,*

*Resulting trust.*

22 Wis. 329; *Winn v. Dillon,* 27 Miss. 494; *Cameron v. Lewis,* 56 id. 76; *Gillenwaters v. Miller,* 49 id. 150; *Chastain v. Smith,* 30 Ga. 96; *Heard v. Pilley,* 4 Ch. App. L. R. 548; *Lees v. Nuttall,* 1 Russ. & M. Ch. 53; same case, affirmed on appeal, 2 Myl. & K. Ch. 819; *Taylor v. Salmon,* 4 Myl. & C. Ch. 134; *Cave v. Mackenzie,* Fisher's An. Digest for 1877, 400; *Baker v. Whiting,* 3 Sumner, 476; *Snyder v. Wolford,* 33 Minn. 175; S. C. 22 N. W. Rep. 254; *Peebles v. Reading,* 8 Serg. & R. 484; *Burrell v. Bull,* 3 Sandf. Ch. 15; and other cases heretofore cited.)

The defendant also urges, in connection with the statute of frauds and the fact that the plaintiff did not advance the purchase-money, the further facts that the plaintiff has never had the possession of the property in controversy and has never made any improvements thereon. We do not think that these further facts can make any difference. The plaintiff could not have taken the possession of the property until after he had purchased Mrs. Dihle's title thereto, and he employed the defendant for no other purpose than to assist him in purchasing such title; and it was solely the defendant's fault that he never obtained the possession of the property. We think that the other facts upon which the resulting trust is claimed are, aside from possession and improvements, amply sufficient. Even the defendant himself and his authorities would not consider possession and improvements as of any importance if the plaintiff had advanced the purchase-money. The facts that the defendant was the agent of the plaintiff for the purpose of negotiating for the purchase of the property; that in violation of his agency he purchased the property for himself and took the title thereto in his own name; and the further facts that the plaintiff has elected to treat the defendant as a trustee holding the property for the plaintiff, and has tendered to the defendant the full amount which the defendant paid for the property, and an additional amount sufficient to compensate the defendant for all his services as agent, are, we think, sufficient to entitle the plaintiff to recover. But besides these facts, the plaintiff, as before stated, also had an

interest in the property, or in at least one-half thereof, at the time when the defendant purchased the same. And we might further state that the plaintiff had previously employed the defendant to act as agent for him in the purchase of other real estate, and had paid him for his services, which fact, together with the present employment, indicates that more intimate and confidential relations existed between the parties than a single transaction or a single employment would.

Under the facts of this case, as heretofore stated, we think the plaintiff holds the paramount equitable title to the property in controversy, and that the defendant merely holds the naked legal title, and that he holds the same in trust for the plaintiff. Therefore we think the plaintiff is entitled to recover in this action. This renders it unnecessary to consider any of the other questions supposed to be involved in this case. We might, however, say that from a hasty examination of the plaintiff's tax title, we are inclined to think that it is also good, and with reference to lot 100 is a better title than that procured from Mrs. Dihle.

The judgment of the court below will be affirmed.

All the Justices concurring.